# EXHIBIT A

## Offender Status Sheet

Date: 06/06/2007

| SBI #: | 00069025 | Name: RAYMOND L BRUTON | | Sex: M | |
|--------|----------|-------------------------|--|--------|--|
| Location(s): HRYCI | | Level(s): 5 | Race: BLACK | DOB: 03/04/1944 | Sex Offender: [ ] |
| AKA: | RAYMOND L BRUTON; RAYMOND BROXTON | | | | |
| Offender Type: | Sentenced | | Officer(s): | | |

### Level: 5

| Start Date: 03/15/2000 | MED: 11/02/2012 | STRD: 09/17/2008 | ADJ: 05/24/2008 | PED: 06/15/2002 | Statutory Days Earned: 1,513.00 |

| CASE #<br>Count Type | CR Roll<br>Judge | Charge Desc<br>Sen. Type/ Sentence Date | Status/<br>Eff. Date | Length<br>Y | M | D | Start Dt | MED | STRD | Adj Date | CR Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DACS00001 | PAROLE BOARD | VIOL OF PAROLE | Current | 12 | 7 | 19 | 03/15/2000 | 11/02/2012 | 09/17/2008 | 05/24/2008 | |
| PRLB | | STANDARD  06/14/2000 03/15/2000 | | | | | | | | | |

### Special Conditions:

| CRIME | Level | Code | Condition Description | Condition Comments |
|-------|-------|------|------------------------|---------------------|
| PAROLE BOARD | 5 | CRT1 | Other Conditions: | SERVED FROM 3/8/81 TO 11/30/92  ALSO SERVED FROM 3/24/97 TO 1/24/98  TOTAL SERVED TIME IS 12 YEARS 7 MONTHS 26 DAYS.  GOODTIME COMPUTED AT AN ACCELERATED RATE OF 10 DAYS PER MONTH  MUST SERVE FROM 3/15/00 TO 11/2/12 OR 12 YEARS 7 MONTHS 19 DAYS.  YOUR MANDTORY RELEASE WAS REVOKED  YOU WILL SERVE THE BALANCE OF THE SENTENCE FROM WHICH YOU WERE RELEASED  YOU WILL LOSE YOUR PREVIOUSLY EARNED GOODTIME INCLUDING MERITORIOUS GOODTIME EARNED UNDER THE PROVISIONS OF 11 DEL. C CHAPTER 43 SUBCHAPTER VIII  HOWEVER AFTER DUE CONSIDERATION OF YOUR CASE THE BOARD DECIDED YOU MAY REAPPLY FOR PAROLE CONSIDERATION IN 24 MONTHS (6/2002)  THE BOARD RECOMMENDS ANGER MANAGEMENT COUNCELING AND A MENTAL HEALTH EVALUATION  PRIOR TO YOUR NEAT HEARING  KF AS TO CA#02M04111 INMATE LOSSES 3 DAYS G/T PER SC/NCC ...DMC |

# EXHIBIT B



STATE OF DELAWARE

## BOARD OF PAROLE

CARVEL STATE OFFICE BUILDING - FIFTH FLOOR
820 N. FRENCH STREET
WILMINGTON, DELAWARE 19801

DWIGHT F. HOLDEN
CHAIRPERSON

TELEPHONE: (302) 577-5233
FAX: (302) 577-3501

November 20, 2002

Mr. Raymond Bruton
SBI# 00069025
Delaware Correctional Institution
Smyrna Landing Road
Smyrna, DE  19977

Dear Mr. Bruton:

At the meeting of the Parole Board on November 19, 2002, your release to parole supervision was denied by a vote of 4 to 0.

The Board's decision was based upon the following factors:

- Inability to Accept Responsibility for Offense
- Substance Abuse History
- Not Recommended by Institution
- Disruptive Institutional Behavior

Based on the above-noted factors, the Board of Parole believes that you continue to pose a risk to the community.  **The Board of Parole recommends that you work with your counselor to develop a plan for continued mental health counseling and violent offender counseling.**

It is the Board's order that you are now eligible to be reheard for parole consideration at any time after the expiration of twenty-four (24) months (11/2004). You may file a new application for parole consideration in accordance with the parole authority and procedure as stipulated in 11 Del. C. §4347, revised July 1, 1992.

Sincerely,

Dwight Holden
Chairperson

DH:kh

c:    Warden Thomas Carroll, DCC
      Ms. Rebecca McBride, DCC Records
      File # 3348

# EXHIBIT C



STATE OF DELAWARE

## BOARD OF PAROLE

CARVEL STATE OFFICE BUILDING - FIFTH FLOOR
820 N. FRENCH STREET
WILMINGTON, DELAWARE 19801

DWIGHT F. HOLDEN
CHAIRPERSON

TELEPHONE: (302) 577-5233
FAX: (302) 577-3501

## BOARD'S ORDER

**NAME:** RAYMOND BRUTON                     **STATUS:** INMATE

**DPB#:** 3348                                **SBI#:**   00069025
**CRA#:** IN-80-12-0863; IN82-10-1728

**TYPE:** PRE-PAROLE REPORT                  **DATE OF REPORT:** 06/30/03
                                             **DATE RECEIVED:**   08/05/03

**BY:**   DENNIS SPENCE                       **OFFICE:** DELAWARE CORRECTIONAL
          SENIOR CORRECTIONAL COUNSELOR                 CENTER

      **WHEREAS**, a duly authorized representative of the Department of Correction has submitted evidence that official action should be taken; and

      **WHEREAS**, said evidence has been carefully considered:

## IT IS HEREBY ORDERED THAT:

    1.    The request for early Parole Eligibility Date is denied at this time.

    2.    Raymond Bruton Sr. may reapply at his regular parole eligibility date of November 2004.

                HEARING DATE:  October 28, 2003

                CHAIRPERSON: Dwight F. Holden
                Date: October 29, 2003

Seal

DH:kh

xc:    Raymond Bruton, DCC
       Ms. Rebecca McBride, Records Supervisor
       File#3348

# EXHIBIT D



RECEIVED
'05 APR 4 AM 1 22
STATE OF DELAWARE
D.C.C. RECORDS

## BOARD OF PAROLE
CARVEL STATE OFFICE BUILDING - FIFTH FLOOR
820 N. FRENCH STREET
WILMINGTON, DELAWARE 19801

DWIGHT F. HOLDEN
CHAIRPERSON

TELEPHONE: (302) 577-5233
FAX: (302) 577-3501

March 30, 2005

Mr. Raymond Bruton
SBI# 00069025
Delaware Correctional Center
Smyrna Landing Road
Smyrna, DE  19977

Dear Mr. Bruton

At the meeting of the Parole Board on February 8, 2005, your release to parole supervision was denied by a vote of 5 to 0.

The Board's decision was based upon the following factors:

- Prior Failure Parole/Probation
- Significant Criminal History
- Substance Abuse History
- Inability to Accept Responsibility for Offense
- Disruptive Institutional Behavior

Based on the above-noted factors, the Board of Parole believes that you continue to pose a risk to the community.  **The Board of Parole recommends that you work with your counselor to develop a plan for continued mental health, violent offender, and anger management counseling.**

It is the Board's order that you are now eligible to be reheard for parole consideration upon successful completion of the Key program. In addition, there must be a resolution of institutional write ups.  You may file a new application for parole consideration in accordance with the parole authority and procedure as stipulated in 11 Del. C. §4347, revised July 1, 1992.

Sincerely,

Dwight F. Holden
Chairperson

DH:gb
c:    Warden Thomas Carroll
      Ms. Rebecca McBride
      File # 3348

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAYMOND L. BRUTON,                              )
                                                )
          Plaintiff,                            )
                                                )
                                                )        Civil Action No. 06-791-JJF
     v.                                         )
                                                )        Jury Trial Requested
                                                )
MRS. PAMELA A. MINOR, MRS.                      )
CHERYL REGAN, MR. STANLEY W.                    )
TAYLOR, and WARDEN RAPHAEL                      )
WILLIAMS,                                       )
                                                )
          Defendants.                           )

## AFFIDAVIT OF PAMELA A. MINOR

I, Pamela A. Minor, having been duly sworn by law, do hereby depose and state as follows:

1.    I am employed by the State of Delaware Department of Correction ("DOC") as a Treatment Administrator at the Howard R. Young Correctional Institution ("Howard Young"), Wilmington, Delaware. I have been employed at Howard Young since 1985 and as a Treatment Administrator since July 1, 2002.

2.    Raymond Bruton, Sr., SBI #00069025, is an inmate currently incarcerated at Howard Young. His records indicate that he was transferred from the Delaware Correctional Center ("DCC") to Howard Young on August 30, 2005.

3.    In November 2002, while he was housed at DCC, Mr. Bruton had a hearing before the Delaware Board of Parole (the "Parole Board") regarding his request for parole supervision. As reflected in the Parole Board's November 20, 2002

1

letter to Mr. Bruton, the Parole Board denied Mr. Bruton's request for parole based on several factors including Mr. Bruton's failure to accept responsibility for his offense, his substance abuse history and his disruptive institutional behavior. The Parole Board recommended that Mr. Bruton work with his counselor to develop a plan for mental health and violent offender counseling. The Parole Board also ordered that Mr. Bruton was eligible to be reheard for parole consideration at any time after November 2004.

4.    In October 2003, prior to the date the Parole Board ordered that Mr. Bruton was eligible to be reheard for parole consideration, Mr. Bruton petitioned the Parole Board for early parole consideration. The Parole Board denied Mr. Bruton's request and instructed him to reapply at his regular eligibility date of November 2004.

5.    On February 8, 2005, Mr. Bruton had another hearing before the Parole Board. At this hearing the Parole Board again denied Mr. Bruton's request for parole.    This time the Parole Board cited Mr. Bruton's prior failure of parole/probation, significant criminal history, substance abuse history, inability to accept responsibility for his offense and disruptive institutional behavior as reasons for its denial of parole. In a letter dated March 30, 2005, the Parole Board recommended to Mr. Bruton that he develop a plan for mental health, violent offender and anger management counseling. The Parole Board also instructed Mr. Bruton not to reapply for parole until he had completed the Key Program and resolved his institutional write-ups.

6.    In August 2005 Mr. Bruton was transferred to Howard Young and entered into the Key Program.

2

7.    Approximately eight months later, in April 2006, prior to his completion of the Key Program, Mr. Bruton drafted a letter stating that he wished to defer his next parole hearing until he completed the requirements outlined by the Parole Board in its March 30, 2005 letter. I confirmed with Mr. Bruton his request to defer the parole hearing. Once he verified that he wanted to defer his hearing, I sent an e-mail to the Bureau Chief and the Parole Board Chairperson informing them of Mr. Bruton's request to defer his next parole hearing.

8.    On May 26, 2006, Mr. Bruton successfully completed the Key Program.

9.    From July 14, 2006 through July 16, 2006, an Alternative to Violence ("AVP") Basic seminar was held at Howard Young. Although Mr. Bruton was scheduled to participate in this seminar he was unable to do so because he was housed in administrative segregation for a sanction he received as a result of being found guilty of institutional misconduct, namely disorderly/threatening behavior.

10.    After his release from administrative segregation on August 6, 2006, Mr. Bruton was scheduled to attend another AVP Basic workshop. On October 1, 2006, Mr. Bruton completed the AVP Basic workshop. Immediately following the completion of his workshop, on October 1, 2006, Mr. Bruton sent me a letter asking me if he was going to receive a review by the Parole Board. I informed Mr. Bruton that I would ask a counselor to review his case status with him.

11.    Approximately two weeks later I received another letter from Mr. Bruton dated October 17, 2006. In his letter Mr. Bruton stated that he had not been seen by a counselor. I replied to Mr. Bruton's letter and informed him that his

consideration for pre-parole staffing had not been initiated since he had opted to defer his parole hearing. I also informed him that I was aware he had completed the AVP workshop and that his case would be reviewed.

12.    In a third letter to me, dated October 29, 2006, Mr. Bruton stated that he wanted to have a hearing before the MDT Board as soon as possible. Again I responded to Mr. Bruton that a staff member would review his case with him in accordance with procedure.

13.    A review of Mr. Bruton's case status revealed that although he had completed the Key Program and the AVP Basic workshop, he had not complied with the Parole Board's recommendation to take anger management classes. Moreover Mr. Bruton incurred several institutional write-ups following his February 2005 Parole Board hearing – in violation of the Parole Board's recommendations.

14.    Despite Mr. Bruton's failure to comply with the Parole Board's recommendations, on March 7, 2007, the Multi-Disciplinary Team ("MDT") Board at Howard Young met to decide whether the institution should recommend to the Parole Board that Mr. Bruton receive parole. At the hearing the MDT Board voted not to recommend Mr. Bruton for parole based on his failure to comply with the recommendations of the Parole Board. The MDT Board also found that Mr. Bruton still refused to take responsibility for his offenses.

15.    In accordance with procedure, after the MDT Board met and determined its recommendation, a pre-parole report that included the MDT Board's recommendation was sent to the Parole Board.

4

17.    I, and the other members of the Classification/Treatment Unit at Howard Young, followed the procedures necessary to afford Mr. Bruton an opportunity to appear before the MDT Board for re-classification and a pre-parole hearing.    Any delay that Mr. Bruton had in appearing before the MDT Board or the Parole Board was a result of his own request to defer his parole hearing and his failure to follow all of the recommendations outlined by the Parole Board.

Pamela A. Minor

**SWORN  AND  SUBSCRIBED** before  me  this  5th  day  of June _____, 2007.

Notary

TYSHA Y. BRYANT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Jan. 19, 2008

5

# EXHIBIT F

To: Ms. C. Pettyjohn Classification
Treatment Department:

From: Raymond L. Bruton, SBI# 069035

Date: April 9, 2006:

RE: M.D.T. Classification.

Dear Ms. Pettyjohn;
   May this letter arrive to find you in good
spirits.
   Ms. Pettyjohn, Per Mr. Johnson's con-
versation with you on Friday, April 7, 2006,
I am requesting that my M.D.T Hearing, the
results be deferred from being sent to the
Parole Board until I'm able to fulfill
the recommendations of the Parole Board
from their last meeting of February 8, 2005,
which are to develope a plan for continued
Mental Health, violent offender, and
anger management counseling.

cc: Parole Board:

Yours Truly,
Raymond L. Bruton

# EXHIBIT G

Disciplinary#
3015969

1301 E. 12th Street
WILMINGTON DE, 19809
Phone No. 302-429-7700

# DISCIPLINARY REPORT

| Disciplinary Type: Class1 | | Housing Unit: Pod 2Q | | IR#: 3019758 | | |
|---|---|---|---|---|---|---|
| SBI# | Inmate Name | Inst. Name | Location Of Incident | | Date | Time |
| 00069025 | Bruton, Raymond L | HRYCI | Dorm II | | 07/08/2006 | 18:25 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior, 2.05 Disrespect, 2.06/200.108 Failing to Obey an Order, 2.11/200.102 Off Limits

Witnesses: 1. N/A          2. N/A          3. N/A

| Description of Alleged Violation(s) |
|---|

On The Above Date And Approximate Time Inmate Bruton, Raymond Sbi# 0069025 Was Ordered By Sgt. Denney Not To Stand On The Steps To The Module. Inmate Bruton Became Argumentative Towards Sgt. Denney And Lt. Williams When He Was Told He Would Not Get An Explanation To The Order. Lt. Williams Ordered Inmate Bruton To His Bunk. Inmate Bruton Complied Only After Lt. Williams Issued A Final Order. Sgt. Denney And Lt. Williams Talked To Counselor West And Advised That Inmate Bruton Has Been A Distraction To The Program And Further More Has Already Graduated. The Decision Was Made To Move Inmate Bruton To 1-B. During The Escort. During The Escort Inmate Bruton Continued To Talk After Being Ordered Several Times By Sgt. Denney And Lt. Williams Not To. Once In The Alcove Inmate Bruton Became Even More Disorderly By Verbally Attacking C/O Ware Calling Him A "Fat Boy", Lt. Williams Calling Him A "Goofball" And Sgt. Denney Calling Him A "Grease Ball". Lt. Williams Then Decided To Move Inmate Bruton To 1-E And Place Him On Pre-Hearing Detention For His Consistant Disorderly Behavior.
Reporting Officer: Denney, Rahim L (CO Corporal/Sgt. - Large Inst.)

| Immediate Action Taken |
|---|

Immediate action taken by: Denney, Rahim L -CO Corporal/Sgt. - Large Inst.

Moved Inmate Bruton To 1-E.

| Offender Disposition Details |
|---|

Disposition: N/A          Date: N/A          Time: N/A          Cell secured?  No

Reason: N/A

Disposition Of Evidence: N/A

| Approval Information |
|---|

Approved: [x]     Disapproved: [ ]  Approved By: Daniels, Kimphus  (Staff Lt./Lt)

Comments: N/A

| Shift Supervisor Details |
|---|

Date Received:               Time:          Received From: ,

Shift Supervisor Determination:

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

_____
Daniels, Kimphus  (Staff Lt./Lt)

I have received a copy of this notice on DATE: _____ TIME: _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer: _____     Offender: _____
                                                                  Bruton, Raymond L

**Page 1 of 1**

| DR#<br>3015969 | HRYCI Howard R.Young Correctional Institution<br>1301 E. 12th Street<br>WILMINGTON DE, 19809<br>Phone No. 302-429-7700 | Date: 01/23/2007 |
|---|---|---|

## DISCIPLINARY HEARING DECISION

| Inmate : Bruton, Raymond L | SBI#:00069025 | Type:Class 1 |
|---|---|---|
| Institution:HRYCI Howard R.Young Correctional Institution | Hearing Date: 07/16/2006 | Time: 20:46 |

**Inmate Present:** Yes    **Reason(If No):** N/A

**Violation:** 1.06/200.203 Disorderly or Threatening Behavior, 2.05 Disrespect, 2.06/200.108 Failing to Obey an Order, 2.11/200.102 Off Limits

**Inmate PLEA: Not Guilty**

**Inmate Statement:** i/m stated Sgt.Denny and Lt. Williams where wrong

**Witness Name:** __

**Testimony :** i/m v. Perry stated he was not in area when i/m Bruton got into it with Lt.Williams and Sgt. Denny

**Decision :Guilty**

**Rational :** officers report, and i/m Brutons behavior durning hearing.(hearing was stopped after 4 minutes because of i/m Brutons disruptive behavior durning the proceeding)

**Sanctions:** N/A

### HEARING OFFICER'S SIGNATURE

Daniels, Kimphus

I understand that I may appeal the decision of a Class II Hearing to the Class I Hearing Officer.I may appeal the decision of a Class I Hearing to the facility administrator.I also understand that I have 72 hours to submit my notice of appeal in writing to the Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

I [X]   DO   [ ]   DO NOT INTEND TO APPEAL

**INMATE's SIGNATURE**

### ORDER TO IMPLEMENT SANCTIONS

[X]   Inmate does not wish to appeal          [ ]   Appeal has been denied by Commissioner or Designate

[ ]   Sanctions have been modified          [ ]   Time Limit(72 Hours since hearing) for appeal has expired

It is here by ordered to implement the sanctions:

| Sanctions | Start Date | Days | End Date |
|---|---|---|---|
| 1. Confinement to Quarter | 07/08/2006 | 30 | 08/06/2006 |

# EXHIBIT H

## Howard R. Young Correctional Institution

Memorandum

To:        RAYMOND BRUTON, 2Q-21

From:      Ms. Jean Booker,
           Volunteer Services Administrator

Date:      September 15 2006

Subject:   Alternatives To Violence Project (AVP) <u>Basic</u> Workshop
           September 29, 30, October 1, 2006

*Received on 9/20/06*

=================================================================

    You have been selected from the AVP waiting list to attend the upcoming Basic AVP seminar to be held in the Education area on Friday evening, 9/29/06, from 18:00 to 21:00 hours, and on Saturday, 9/30/06, and Sunday, 10/01/06, from 07:30 to 15:45 hours   Attendance is voluntary. However, should you wish to attend you must participate all three days to receive your certificate, and <u>you will not be permitted to receive visits that weekend</u>.

    To be placed on the memo for the seminar please respond using the attached form no later than Wednesday, 9/20/ 2006.  The seminar will be filled on a first come basis.  If you are unable to attend but wish to remain on the waiting list you must also return the form below.  Your name will be retained on the waiting list for future seminar dates.  Your cooperation is appreciated.

# EXHIBIT I

TO: MRS. Pamela A. Minor, Treatment Administrator

From: Raymond L. Bruton

Date: October 1, 2006

RE: Parole Date

Dear Mrs. Minor;

On October 1, 2006, I was successful at completing the (AVP) Basic Work Shop. I rec'd the certificate and I am scheduled for the advanced class, which will be scheduled somewhere in the month of November 2006.

Whereas, with this accomplishment, is it fair for me to assume, I will be classified and promptly place for a review before the Parole Board?

Furthermore, I appreciate your assistance, and I realize this matter could not have been finalize without your direction, Thank you.

Tuesday, October 3, 2006
By copy of this letter, I will request
that a counselor follow-up, and review
your status with you.
    -Pamela A. Minor

Yours Truly,
Raymond L. Bruton

# EXHIBIT J

TO: MRS. Pamela A. Minor,
      Classification /treatment Unit

From: Raymond L. Bruton

Date: October 19, 2006

RE: Classification & Parole Date

Dear MRS. Minor;
      No Counselor has seen me, as of the date
of this note. Is there something wrong?

Thursday, October 19, 2006
To my knowledge, consideration
for a Pre-Parole staffing has
not been initiated, since you opted
to have your Parole deferred.
I am aware that you did the AVP
Beginners workshop; therefore, your
case will be reviewed to see where
we go from here.
                -Pamela A. Minor

Yours Truly,
Raymond L. Bruton

# EXHIBIT K

TO: MRS. Pamela A. Minre; Administrator of Treatment

FROM: Raymond L. Beaton

Date: October 29, 2006

RE: Parole Date

Tuesday, October 31, 2006
I believe that you addressed this matter
in a previous letter, and my response
was that the appropriate staff would
meet to assess your status, and act
in accordance to procedure. I suggest
that you be cooperative and patient
throughout this process.
Pamela A. Minor, Treatment Administra

Dear Mrs. Minre;
    I wrote to you on two occasions, this month of
October, 2006. I informed you I completed the AUP
Group, and as you mention in your Reply Note, I did
defer my MDT Hearing until I completed the AUP
Group, that was completed on Oct. 1, 2006, the day I
wrote you my First Letter.
    Whereas, nothing should be delaying my MDT
Hearing at this date and time.
    Please, mrs minre, place my Name be Fore the
MDT Board, For a hearing as Soon as Possible.

CC: Warden Williams

Sincerely
Raymond L. Beaton

# EXHIBIT L

## CLASSIFICATION DECISION PAGE

Routine ⬤ Classification   PAROLE   ⬤ Maintenance Review

Name: Briton, Raymond L.                    SBI#: 069025

Risk Assessment Scale:

| | Community/Minimum | Minimum | Medium | Maximum |
|---|---|---|---|---|
| | -2 to 04 | 05 - 08 | 09 - 16 | 17 or more |
| | | | 10 | |

Override: ☐ Yes   ☑ No   If yes, briefly specify reason: _____
Mandatory Policy Override Removal Approved By Warden/Designee _____

| | Present | ICB or MDT Recommendation | IBCC Recommendation/ Decision | CICB Recommendation/ Decision | IRCB Decision |
|---|---|---|---|---|---|
| Security | Medium | | | | |
| Housing | | | | | |
| Job | Workpool | | | | |
| Education | Academics | | | | |
| Therapy | | | | | |
| Other | | Parole not recommended | | | |
| Other | | | | | |
| Next Review Date | | Month ___/___ Year | Month ___/ Year | Month ___/ Year | |

| MDT or ICB MEMBERS PRESENT | Lt. Queener, F. Levy, C. Regan | Vote: 3-Ø Abstention: |
|---|---|---|
| MDT or ICB CHAIRPERSON | Lt. Willi... (Ann...) | Date: 3-7-07 |

MDT or ICB COMMENTS   Parole not recommended due to inmates failure to abide by previous Parole Board recommendations.

| IBCC CHAIRPERSON | Date: | Vote: Abstention: |
|---|---|---|
| Override (include justification in comments)____   Comments: | | |

| CICB CHAIRPERSON | Date: | Vote: Abstention: |
|---|---|---|
| Override (include justification in comments)____   Comments: | | |

| IRCB CHAIRPERSON: | Date: | Approved: Disapproved: |
|---|---|---|
| Override (include justification in comments)____   Comments: | | |

# EXHIBIT M

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: 2000 WL 1728263 (D.Del.))**

H

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Brenda Janice OWENS, Plaintiff,
v.
Patrick J. RYAN, et al., Defendants.
**No. CIV.A. 98-413-GMS.**

April 10, 2000.

Brenda Janice Owens, pro se, Wilmington, Delaware. Plaintiff.

John A. Eberly, State of Delaware Department of Justice, Wilmington, Delaware. Attorney for Defendants.

MEMORANDUM OPINION

SLEET, District J.

I. INTRODUCTION.

**\*1** At all relevant times leading up to the filing of this lawsuit, Brenda Janice Owens was incarcerated at the Baylor Women's Correctional Center ("BWCI") which is located in New Castle, Delaware. [FN1] In her amended complaint, Owens claims that various officials and employees at the women's prison (as well as the chairperson of the State Board of Parole) violated her constitutional rights by failing to properly notify her of a recent parole hearing. Because she did not have sufficient time to prepare for this hearing, Owens contends, she failed to present her best case for early release. As a result, she claims, her request to modify her sentence was denied. For this alleged wrong, Owens seeks declarative, injunctive, [FN2] and monetary [FN3] relief against the following individuals: Patrick J. Ryan, the warden of BWCI; Marlene Lichtenstadter, the chairperson of the Parole Board; Colleen Schotzberger, a counselor at BWCI and chairperson of the classification team; and Shirley Klein, a records supervisor.

> FN1. As the court will discuss, Owens was recently released from prison, apparently on parole.

> FN2. In particular, Owens requests an

"injunction ordering th[e] defendants ... [to r]efrain from continuing [her] custody ...." The court will dismiss this claim because Owens cannot achieve through a Section 1983 action what can only be accomplished through a petition for a writ of habeas corpus. See, e.g., Presier v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Furthermore, even if Owens could obtain this relief through a federal civil rights action, her request for an injunction has become moot given her release from prison.

> FN3. The court will also dismiss all claims for monetary damages brought against the defendants in their official capacities because they enjoy sovereign immunity under the Eleventh Amendment. See, e .g., Pena v. Gardner, 976 F.2d 469, 472-73 (9th Cir.1992) (citing, inter alia, Edelman v. Jordan, 415 U.S. 651, 663 (1974)); Orum v. Haines, 68 F.Supp.2d 726, 729 (N.D.W.Va.1999) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

All of these defendants have moved for summary judgment on several grounds. Owens opposes this motion, primarily arguing that there are genuine issues of material fact which prevent the entry of judgment as a matter of law. Owens also claims that she requires additional evidence in order to adequately respond to the issues raised by the defendants. Furthermore, Owens contends, at the very least, she has stated claims upon which relief can be granted. Therefore, she argues, her lawsuit should not be dismissed without first affording her the opportunity to cure any deficiencies in her pleadings.

To an extent, the court agrees. Although several of Owens' claims fail as a matter of law, it would appear that she may be able to allege a set of facts which would entitled her to relief. Thus, while the defendants' motion will be granted in part, the court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: 2000 WL 1728263 (D.Del.))**

will afford Owens additional time to refine her surviving allegations. The following sections set for the basis for this decision more thoroughly.

## II. STANDARD OF REVIEW.

At the outset, the court notes that while the defendants claim to have moved for summary judgment, they have argued that Owens has not stated a claim upon which relief can be granted. *Compare* Fed.R.Civ.P. 12(b)(6) (1999) *with* Fed.R.Civ.P. 56(c) (1999). Admittedly, in support of their motion, the defendants did attach material outside the pleadings [FN4] which, in some instances, can provide a basis for converting a motion from one to dismiss to one for summary judgment. *See* Fed.R.Civ.P. 12(b). However, before the court can make this type of conversion, it must ensure that Owens has been given sufficient notice of which legal standard will apply so that she may properly oppose the motion. *See Neal v. Kelly,* 963 F.2d 453, 455-56 (D.C.Cir.1992) (citing *Lewis v. Faulkner,* 689 F.2d 100, 101 (7th Cir.1982)).

> FN4. In particular, they provided an affidavit by Faith Levy (who is not a party to this lawsuit) which disputes many of Owens' allegations.

In opposition to the defendants' motion, Owens has made a number of inter-related arguments which all turn on the differences between the Rule 56 and Rule 12(b) standards. First, Owens has submitted an affidavit of her own which blanketly denies that the defendants' version of events is correct. Thus, she claims, there are genuine issues of material fact which preclude the entry of judgment as a matter of law. Next, Owens contends that to the extent that the record evidence fails to create genuine issues of material fact, she has not had sufficient opportunity to obtain the necessary discovery to support her claims. Therefore, she argues, she should be afforded an opportunity to obtain this evidence before the court rules on the pending motion. *See* Fed.R.Civ.P. 56(f) (1999). Finally, Owens claims that, at a minimum, the court should not dismiss her complaint because it does not appear beyond a doubt that she can prove no set of facts which would entitled her to relief. *See, e.g .,* Haines v. Kerner, 404 U.S. 519, 521 (1972) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**\*2** In light of these arguments, the court will first examine Owens' allegations to determine whether she has stated a claim upon which relief can be granted. [FN5] To the extent that Owens' amended complaint

can survive a motion to dismiss, the court will then consider whether her claims are supported by sufficient evidence. In making this determination, the court will also consider whether Owens should be afforded the opportunity to obtain additional discovery so that she can better support her claims. With this approach in mind, the court turns to a discussion of the relevant facts.

> FN5. In conducting this analysis, the court must accept all of Owens' factual allegations as being true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Moreover, because she is proceeding *pro se,* the court must interpret Owens' allegations liberally. *See Zilch v. Lucht,* 981 F.2d 694, 694 (3d Cir.1992) (citing *Haines,* 404 U.S. at 520). For this reason, the court can only dispose of Owens' claims if it appears "beyond a doubt" that she can prove no set of facts that would entitle her to relief. *See Graves,* 117 F.3d at 726 (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Nami,* 82 F.3d at 65 (citing same).

## III. BACKGROUND.

In 1993, Owens began serving a prison sentence at BWCI. After five years, the prison's multi-disciplinary team unanimously voted to modify Owens' sentence in light of her "exceptional rehabilitation." One month later, in December of 1997, this modification was unanimously approved by the prison's classification board. According to Owens, she then waited for someone at the prison to inform her of the date for her parole hearing.

Owens contends that, around this time, she spoke with Levy who informed her that her hearing would be held in two or three months. Although the parties dispute the circumstances surrounding this conversation, Levy does admit that she did not provide Owens with the specific date of this hearing. Instead, Levy has stated that she provided Owens with an "approximate date." According to Levy, as a matter of prison policy, inmates cannot be given the exact date of their parole hearings because the disclosure of this type of information would pose a security risk and possibly endanger the safety of the correctional officers charged with transporting the prisoners to the facility where the hearings are held.

On March 10, 1998, a correctional officer informed Owens that her parole hearing would commence in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: 2000 WL 1728263 (D.Del.))**

ten minutes. Apparently, it was going to be conducted through the use of video-conferencing. According to Owens, this was the first (and only) time that she had been given a specific date and time for her hearing. Because she was not adequately prepared for her hearing, Owens contends, her request for a sentence modification was denied. Owens claims that if she had received sufficient notice of this hearing, she could have better prepared herself for and presented herself to the Parole Board. Owens also claims that, with advance notice of the hearing, she could have arranged for favorable witnesses to either testify or send letters on her behalf. As a result, she claims, she might have been paroled.

 Owens further contends that, as her acting counselor, Schotzberger was obligated to give her sufficient notice of her hearing. [FN6] Instead, however, Owens claims, in response to each one of her requests for her hearing date, Schotzberger simply stated that this information was "not available." After reviewing the record, it seems that Schotzberger responded in this manner because Klein, the records supervisor, failed to forward the hearing notice to the counselor's office. According to Owens, after the Parole Board denied her request, she wrote to Ryan to inform him of the situation and to ask for a new parole hearing. While Ryan appears to have written a letter to Lichtenstadter to inform her of Owens' situation, it seems that she was not immediately given a new parole hearing. This lawsuit followed.

> FN6. Apparently, during the time leading up to her hearing, Owens' regular counselor was on medical leave.

 **\*3** On March 9, 2000, Owens submitted a letter to the court, stating that her address had changed. Apparently, she is no longer incarcerated that the BWCI. Instead, it appears as if she now resides in Wilmington, Delaware.

 IV. DISCUSSION.

 In her amended complaint, Owens claims that the defendants violated a number of her constitutional and statutory rights while they were acting under the color of state law. *See* 42 U.S.C. § 1983 (1994). Although she has brought six separate claims against the defendants, they all arise out of the same allegedly unconstitutional conduct.

 Specifically, Owens claims that she was treated differently than other inmates at BWCI who were

also being considered for parole. According to Owens, unlike these inmates, she was not given sufficient notice of her parole hearing or any assistance in preparing for this hearing. As a result, she contends, she was not adequately prepared for her appearance before the Board. Consequently, she contends, her request to modify her sentence was denied. Owens claims that her request probably would have been granted if she had been given sufficient time and assistance to properly prepare for the hearing. At a minimum, she argues, she would have been able to present witnesses and other evidence on her behalf at the hearing. Finally, Owens appears to take issue with the way in which her hearing was held. Specifically, she claims that because it was conducted through video-conferencing, she was denied the opportunity to fully interact with the members of the Parole Board.

 When viewed in this light, Owens' claims can be broken down into the following three categories:
  (A) allegations that the events leading up to her parole hearing violated her constitutional rights to due process and equal protection because she was not given sufficient notice of her hearing and because the assistance she received prior to her hearing differed significantly from other inmates;
  (B) allegations that the events at the parole hearing violated her constitutional and statutory rights to personally appear before the Board and present witnesses and other evidence on her behalf;
  (C) allegations that the decision of the Parole Board to deny her request to modify her sentence violated her constitutional rights and her liberty interests because it was arbitrary and capricious and based on impermissible factors.

 The court will address each one of these claims in turn.

 A. The Events Leading Up To Owens' Parole Hearing.

 According to Owens, her constitutional rights to due process and equal were violated because she did not receive sufficient notice of her parole hearing and because other inmates received much more assistance in preparation for their hearings than she did.

 1. Owens' due process claims.

 As the defendants point out, Owens has no constitutional right to parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979)* ("A state may ... establish a

parole system, but it has no duty to do so."); *see also Eskridge v. Casson,* 471 F.Supp. 98, 101 (D.Del.1979) ("[N]o prisoner can legitimately claim that the Delaware Parole Statute confers ... a legally enforceable right to be paroled."). Nevertheless, the Third Circuit has held that "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980). In this respect, Owens has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn,* 975 F.Supp. 761, 764-65 (E .D. Pa.1997), aff'd, 151 F.3d 1025 (3d Cir.1998); *accord Bermudez v. Duenas,* 936 F.2d 1064, 1069 (9th Cir.1991) (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees." ') (quoting *Greenholtz,* 442 U.S. at 12). In addition, to the extent that the State convenes a parole hearing, it would appear that Owens has a procedural due process right to be provided with meaningful or adequate notice of this hearing. *Cf. Greenholtz,* 442 U.S. at 14 (holding that a system which informs inmates of the month of their parole hearing provides them with "constitutionally adequate" notice); *Patten v. North Dakota Parole Bd.,* 783 F.2d 140, 143 (8th Cir.1986) (concluding that even though "no process was due" because the state "ha[d] not created a protected liberty interest in parole," inmates received "ample opportunity" to present their cases to the parole board).

**\*4** Here, Owens claims that she did not receive meaningful notice of her parole hearing. As previously discussed, Owens contends that although she was told in late December or early January that her hearing would be held in two or three months, she only learned of the exact date and time of her hearing ten minutes before it was scheduled to occur.

Citing *Greenholtz,* the defendants point out that the Supreme Court has approved of procedures which only inform inmates of the month of their parole hearing because this type of advance notice afforded the prisoners sufficient time to obtain favorable letters or secure other statements. 442 U.S. at 14 n. 6. Because Owens was effectively told that her hearing would occur in March or April, the defendants argue, she had a sufficient amount of time to begin preparing herself for her appearance before the Board of Parole.

To a degree the defendants are correct. When Owens was told that her parole hearing would occur in two

or three months, she should have begun preparing for a March or April appearance before the Parole Board. From this perspective, she had ample time to arrange for letters or other statements to be submitted on her behalf. She also had the opportunity to begin preparing herself for the hearing.

However, Owens has alleged that, between January and February, she asked her counselor "on a few occasions" whether she knew when the parole hearing would be held. It appears that Owens last asked Schotzberger this question the week before her hearing occurred. Owens claims that, in response to these inquiries, she was told that the information that she was requesting about her hearing was "not available." Given the nature of this response, it is possible that Owens was under the impression that the information was not available because her hearing had not yet been scheduled. However, Owens' contentions on this point are not exactly clear.

Of course, given the allegations, it would seem that Schotzberger's failure to provide Owens with better notice of her parole hearing was, at most, negligent because the counselor was relying on the records supervisor to forward this notice to the appropriate individuals once it arrived at BWCI. Because mere negligence on the part of a prison official cannot serve as the basis for imposing liability under Section 1983, *see, e.g., Davidson v. Cannon,* 474 U.S. 344, 347 (1986) (relying *Daniels v. Williams,* 474 U.S. 327, 331-33 (1986)), it would appear that this claim should be dismissed. Furthermore, it would seem that Owens' due process claim against Klein, the records supervisor, should also be dismissed because there is no indication (or, for that matter, even an allegation) why she failed to forward this notice on to Schotzberger. Thus, Klein's conduct would also appear to have been, at most, negligent.

However, because it is possible that Owens is claiming that these individuals acted with a more culpable state of mind, the court will afford her the opportunity to clarify her allegations. Owens should also provide all of the facts which support her contentions. [FN7] The court will afford her sixty days to make these changes to the amended complaint.

> FN7. In light of this ruling, the court will deny the defendants' motion for a protective order and grant Owens' motion to compel as they relate to Question Nos. 1--8 which are listed in her first set of interrogatories. Through these questions, Owens seeks to

obtain information concerning the events leading up to her parole hearing.

The court will also deny the defendants' motion for a protective order and grant Owens' motion to compel as they pertain to the Item No. 1 which is listed in her first request for production of documents. Through this request, Owens seeks to obtain a copy of the letter which the Parole Board sent to BWCI informing individuals of the date for Owens' hearing.

The defendants have thirty days to comply with these requests.

**\*5** Finally, after reviewing the record, it is clear that neither Ryan nor Lichtenstadter were personally involved with any of the events that occurred prior to Owens' parole hearing. In fact, Owens does not even contend that these defendants were aware of her situation before she was denied parole. Thus, the court will dismiss Owens' due process claims as they relate to Ryan and Lichtenstadter. *See, e.g., Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990) (affirming the dismissal of a prisoner's civil rights complaint because there was "nothing in the record to suggest that [the defendant] was involved in the acts complained of or that they were done with his knowledge and acquiescence") (relying on *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

2. Owens' equal protection claims.

Even though Owens has not claimed that she is a member of a protected class, "equal protection [still] requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose .... "[P]arole decisions, like all other forms of state action, cannot be based on impermissible purposes." *See Brandon v. District of Columbia Bd. of Parole,* 734 F.2d 56, 60 (D.C.Cir.1984) (*Brandon I* ). Under these circumstances, however, "the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently than other inmates at BWCI, there was a legitimate reason for doing so. In particular, the defendants contend that prison policy prohibits

inmates who are going to appear before the Parole Board from being informed of the exact date for their hearing due to the security risks created by the dissemination of this type of information. Because they had a legitimate reason for failing to provide Owens with the exact date of her parole hearing, the defendants seemingly argue, they did not violate her right to equal protection.

However, according her allegations, Owens was not physically brought before the Parole Board. Her hearing was apparently conducted through video-conferencing. Thus, it is not clear what security risk, if any, would have been generated by giving her a more specific (possibly, even, the exact) date of her appearance. Given the present record, the court cannot conclude that the failure to provide Owens with a more specific date for her parole hearing under these circumstances was rationally related to a legitimate state interest.

While the defendants also argue that Owens cannot maintain her equal protection claim because she was not similarly situated to other inmates who seemed to have been informed of their hearings weeks in advance, the court cannot rule as a matter of law on this issue at this stage of the litigation either.

**\*6** According to the defendants, Owens was not similarly situated to at least one of the inmates identified in her papers because this particular prisoner, Patricia Jones, was participating in different prison treatment program. As a result, this individual received notice of her hearing through different channels than Owens. Furthermore, it seems that it was through this different treatment program that this inmate was able to participate in the mock interview sessions.

In an apparent effort to create a genuine issue of material fact on this point, Owens has alleged that she was similarly situated to Jones. In fact, by her very words, she "alleges that she was indeed situated similarly to ... Jones for [the] purpose of [the] procedural rights to be afforded to both applicants." Owens has made this same contention concerning a second inmate named Nelson by simply stating that this inmate "was also similarly situated to" her.

Owens, however, cannot survive summary judgment by merely restating the allegations contained in her complaint or by blanketly denying the defendant's version of events. *See Searcy v. Singletary,* 894 F.Supp. 1565, 1569 (M.D.Fla.1995) ("[S]ummary judgment is not only proper, but required, when a

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: 2000 WL 1728263 (D.Del.))**

party's response ... consists of nothing 'more than a repetition of his conclus [ory] allegations." ') (quoting *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981)). Instead, Owens must submit *evidence* in support of her claims. This she has not done. Nor has she sought to discover any information on this matter through her document requests and interrogatories. Thus, it would appear that Owens has not introduced sufficient evidence to support the conclusion that she and Jones or Nelson were, indeed, similarly situated.

Nevertheless, because the defendants moved for summary judgment at a fairly early stage in the proceedings while simultaneously seeking a protective order to prevent discovery from going forward until their dispositive motion was resolved, the court does not believe that it would be appropriate to rule as a matter of law on these claims at present. *See* Fed.R.Civ.P. 56(f). For this reason, the court will again afford Owens the opportunity to refine the factual allegations giving rise to her equal protection claims.

Toward this end, Owens should identify the inmates who, she claims, were similarly situated to her. Owens should also describe the treatment that they received which differed from the treatment she experienced. Again, the court will afford Owens sixty days to make these changes to the amended complaint.

Finally, because there is no indication or even an allegation that either Ryan or Lichtenstadter were personally involved with any of the events that occurred prior to Owens' parole hearing, the court will dismiss Owens' equal protection claims as they relate to these two defendants. *See, e.g., Gay,* 917 F.2d at 771 (citing *Rode,* 845 F.2d at 1207).

**B. The Events At The Parole Hearing.**

**\*7** As previously discussed, "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See* Block, 631 F.2d at 236; *accord* Bermudez, 936 F.2d at 1069 (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees." ') (quoting *Greenholtz,* 442 U.S. at 12). Consequently, even though the Parole Board has the discretion to grant or deny an inmate's request for parole, the Board cannot exercise its discretion in a "totally arbitrary" manner or base its decision on "impermissible criteria." *See* Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996)

(quoting *Block,* 631 F.2d at 236); *accord* Brandon I, 734 F.2d at 60 ("[E]qual protection requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose .... [P]arole decisions, like all other forms of state action, cannot be based on impermissible purposes.").

In general, a parole board bases its decision on "impermissible criteria" when it denies a request for parole on the basis of the inmate's race, gender, religion, or some other traditionally suspect classification. *See* Block, 631 F.2d at 236. A parole board typically acts in an "arbitrary manner" when it bases its denial of parole on some other "frivolous" factor which bears "no rational relationship to the purpose of parole," such as the color of an inmate's hair or eyes, the school an inmate attended, or the style of his or her clothing. *Id.*

Here, Owens does not claim that she is a member of a suspect class or that she was denied parole because of this protected status. In fact, it does not seem as if Owens is even claiming that the Parole Board based its decision on factors which bore no rational relationship to the purposes of parole. Instead, as mentioned earlier, Owens essentially claims that she was denied parole because she was not provided with sufficient notice of her hearing.

Specifically, Owens contends that because she was not provided with meaningful notice of her parole hearing, she did not have a sufficient opportunity to "organize her thoughts" or to "arrange for favorable witness testimony" through letters or statement. For this reason, she alleges, the Parole Board denied her request to modify her sentence.

However, at most, these allegations only support the conclusion that the Board based its decision on the observations that it made during the hearing. [FN8] For example, given Owens' contentions, it would seem that the Parole Board concluded that she was not serious about obtaining early release from custody because she had not adequately prepared herself for the hearing. *Cf.* Garvey v. Casson, 423 F.Supp. 68, 70 (D.Del.1976) (noting that the Board can consider a wide variety of factors in determining whether parole is appropriate, including a prisoner's "negative attitude"). Of course, the Board could have also based its decision on the lack of letters or other statements submitted on Owens' behalf which could be interpreted as evincing a belief by others that she should not be paroled. Taking these factors into account, the Board could have permissibly concluded

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
(Cite as: 2000 WL 1728263 (D.Del.))

that there was not a "reasonable probability that ... parole supervision would be in the best interest of society and an aid to rehabilitation of [Owens] as a law-abiding citizen." Del.Code. Ann. tit. 11, § 4347(c) (1999). Finally, because the Board of Parole has "**virtually unfettered discretion with regard to parole-release decisions**," *see Eskridge v. Casson,* **471 F.Supp. 98, 100-01 (D.Del.**1979), it would not be proper to overturn a decision based on conclusions drawn from this type of information, especially without any evidence that the Board acted arbitrarily or impermissibly during its deliberations.

> FN8. As mentioned earlier, there are no allegations or any evidence indicating that Lichtenstadter or any other Parole Board member was aware that Owens had only received notice of her hearing ten minutes before it was held. Nor is there any indication that any member of the Board was personally involved with the failure to provide Owens with more sufficient notice. In fact, the evidence shows that, prior to the hearing, the Board informed the records supervisor at BWCI of the date on which Owens would appear before the Board. Finally, Owens has not claimed that, during her hearing, she informed members of the Parole Board that she had only recently received notice of the proceeding. Thus, there is no indication that Lichtenstadter was aware that the Parole Board may have been conducting a proceeding of which an inmate might not have received sufficient notice.

**\*8** Unfortunately, it is not clear whether Owens is alleging that the Parole Board took impermissible factors into account when it denied her request to modify her sentence or acted in an otherwise arbitrary manner. For this reason, the court will again afford her the opportunity to elaborate upon her claims before ruling on them as a matter of law.

When providing this clarification, Owens should specify whether she is challenging the Parole Board's decision as arbitrary or based on some other impermissible factor. Owens should also explain why she believes that the Board acted arbitrarily and identify what impermissible factors the Board took into account. Again, Owens will have sixty days to incorporate these changes into her amended complaint.

Nevertheless, to the extent that Owens is alleging that her constitutional right to equal protection was violated because other inmates who were similarly situated were paroled while she was not, these claims will be dismissed. As another district court has explained,

> it is difficult to believe that any two prisoners could be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions [such as parole determinations] because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*See Rowe v. Cuyler,* 534 F.Supp. 297, 301 (E.D.Pa.1982), *aff'd,* 696 F.2d 985 (3d Cir.1982). Thus, it is clear that the equal protection claim here fails as a matter of law.

Furthermore, to the extent that Owens is contending that the failure to provide her with sufficient notice of her parole hearing violated her constitutional right under the Sixth Amendment to compel the attendance of witnesses at her hearing, this claim also fails as a matter of law. By its very terms, the Sixth Amendment only applies in the context of criminal trials. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ...."). In addition, "[t]he due process clause of the fourteenth amendment does not generate rights to confrontation, nor to cross-examination or compulsory process (at parole revocation hearings)." *See Firkins v. Colorado,* 434 F.2d 1232, 1234 (10th Cir.1970) (per curiam) (quoting *Alverez v. Turner,* 422 F.2d 214, 218 (10th Cir.1970)). Therefore, the court will dismiss Owens' claim under the Sixth Amendment.

Moreover, to the extent that Owens is attempting to recover for appearing before the Board of Parole through video-conferencing instead of in person, this claim will also be dismissed. Delaware statute specifically provides that "[t]he Board shall have no obligation to allow a person eligible for parole to appear before it, and the Board may deny a parole application without having interviewed the applicant." *See* Del.Code Ann. tit. 11, § 4347(e) (1999). Given the state of Delaware law, Owens does not have any constitutionally protected substantive right or liberty interest in appearing before the Board. Thus, the decision to allow her to appear through the use of video-conferencing could not have violated any of her constitutional rights or interests. Therefore, this claim fails as a matter of law. [FN9]

> FN9. For this reason, the court will grant the defendants' motion for a protective order

and deny Owens' motion to compel as they relate to Questions Nos. 9--22 which are listed in her first set of interrogatories and Item Nos. 2, 3, 7, and 8 which are listed in her first request for the production of documents.

**\*9** Additionally, to the extent that Owens is seeking to recover for the violation of any other state laws governing Delaware's parole system, state statute does not confer a right to introduce live witness testimony. *See* Del.Code Ann. tit. 11, § 4350 (1999) (While the Board must accept written statements, it need not allow individuals to attend the hearing or offer testimony.). Furthermore, these state law claims would appear to be subsumed within Owens' alleged due process violations. *Cf.* *Block,* 631 F.2d at 236 ("[O]nce a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."); *accord Bermudez,* 936 F.2d at 1069 (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees." '). Therefore, to the extent that Owens is attempting to independently recover on these state law grounds, her claims will be dismissed.

Finally, because there is no indication, or even an allegation, that Ryan was personally involved with any of the events that occurred during Owens' parole hearing, the court will dismiss her due process claims as they relate to him. *See, e.g., Gay,* 917 F.2d at 771 (citing *Rode,* 845 F.2d at 1207). In fact, the court will dismiss all of Owens' claims against Ryan because it appears that she is attempting to hold him liable for his inability to convince the Parole Board to immediately grant her a new hearing. However, pursuant to Delaware statute, the Board itself decides whether it will schedule a hearing. *See* Del.Code Ann. tit. 11, § 4347(a) (1999) "[T]he Board shall determine ... if a parole hearing will be scheduled."). Thus, Ryan cannot be held personally responsible for the Board's actions.

V. CONCLUSION.

The court has an obligation to interpret *pro se* pleadings liberally. It also cannot dismiss a complaint unless it appears beyond a doubt that there are no set of facts which would entitle the plaintiff to relief. Furthermore, the court cannot grant summary judgment in favor of a party when the other side has not received the opportunity to sufficiently support its claims. In light of these standards, the court has

elected to dismiss only those claims which clearly fail as a matter of law. To the extent that Owens can refine the surviving claims to allege viable causes of action, she has additional time to do so. Furthermore, because the materials specified in several of Owens' discovery requests seem relevant to these issues, the court will require the defendants to produce these items or respond to her questions before Owens is required to clarify the factual basis for her claims. The court will issue an order to this effect in conjunction with this opinion.

Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)

END OF DOCUMENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RAYMOND L. BRUTON,      )
                                 )
          Plaintiff,       )
                                 )
                                 )      Civil Action No. 06-791-SLR
      v.                   )
                                 )      Jury Trial Requested
                                 )
MRS. PAMELA A. MINOR, MRS.     )
CHERYL REGAN, MR. STANLEY W.  )
TAYLOR, and WARDEN RAPHAEL   )
WILLIAMS,                   )
                                 )
          Defendants.     )

**STATE DEFENDANTS PAMELA A. MINOR, CHERYL REGAN
AND WARDEN RAPHAEL WILLIAMS'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [RE: D.I. 6 & 7]**

        COMES NOW, State Defendants Pamela A. Minor, Cheryl Regan and

Warden Raphael Williams (the "State Defendants")[1], by and through their undersigned

counsel, and hereby respond in opposition (the "Response") to Plaintiff's Motion for

Preliminary Injunction (the "Motion") (D.I. 6 & 7).  In support of the Response, State

Defendants state as follows:

        1.      Plaintiff Raymond L. Bruton, Sr. ("Bruton" or "Plaintiff") is an

inmate presently incarcerated at Howard R. Young Correctional Institution ("Howard

Young").  He is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

        2.      Bruton's present incarceration began on March 15, 2000 for

charges of Violation of Parole for delivery of heroin and Violation of Parole for escape

---

[1] There is no indication that Defendant Stanley Taylor has been served, waived service or
waived his right to respond.  Therefore, Stanley Taylor is not a party to this Response.

after conviction.  Bruton was given a sentence of twelve (12) years, seven (7) months, and nineteen (19) days.  According to his current offender status sheet, Bruton's sentence ends on November 2, 2012.  (Ex. A).

      3.    Several years prior to filing this lawsuit, Bruton began the process of petitioning the Delaware Board of Parole (the "Parole Board") for release to parole supervision.  On November 19, 2002, the Parole Board met for a decision on Bruton's parole request.  The Parole Board denied Bruton's request by a vote of 4 to 0 based upon Bruton's inability to accept responsibility for his offense, his substance abuse history, his disruptive institutional behavior, and the fact that the institution where he was housed did not recommend parole.  (Ex. B).  The Parole Board informed Bruton that he would be eligible for parole consideration again "at anytime after the expiration of twenty-four (24) months."  (*Id*.).  Thus Bruton was eligible to be reheard for parole on or after November 2004.  (*Id*.).

      4.    Despite the Parole Board's order that he was eligible for parole after November 2004, Bruton impatiently applied for an early parole eligibility date in 2003.  (Ex. C.).  In an order dated October 29, 2003, the Parole Board denied Bruton's request for an early parole eligibility date and ordered Bruton to reapply at his regular parole eligibility date of November 2004.  (*Id*.).

      5.    On February 8, 2005, the Parole Board met again for a regular parole hearing to determine whether to release Bruton to parole supervision.  By letter dated March 30, 2005, the Parole Board Chairperson informed Bruton that the Parole Board denied his request for parole by a vote of 5 to 0 because of Bruton's prior failure of parole/probation, significant criminal history, substance abuse history, inability to accept

responsibility for his offense and disruptive institutional behavior. (Ex. D). The Parole Board recommended that Bruton, "work with [his] counselor to develop a plan for continued mental health, violent offender, and anger management counseling." (*Id.*). The Parole Board also ordered that Bruton could petition again for parole consideration upon successful completion of the Key Program and resolution of his institutional write ups. (*Id.*).

6.    In August 2005 the Delaware Correctional Center ("DCC") transferred Bruton to Howard Young where he entered into the Key Program as required by the Parole Board. (Ex. E - "Minor Affidavit" at ¶ 6).

7.    In April 2006, prior to his completion of the Key Program, Bruton drafted a letter requesting deferral of his next parole hearing. (Ex. F). Bruton's request was based on his belief that he had not completed the requirements established by the Parole Board in 2005. (*Id.*). Defendant Minor verified Bruton's request to defer with him and then informed the Parole Board Chairperson of Bruton's request to defer. (Minor Affidavit at ¶ 7).

8.    Bruton completed the Key Program at Howard Young on May 26, 2006. (Minor Affidavit at ¶ 8).

9.    On July 8, 2006, Bruton received a write up for institutional misconduct. (Ex. G). Eight days later, on July 18, 2006, Bruton received a disciplinary hearing on his write up and was found guilty of disorderly/threatening behavior. As a result Bruton received a sanction of 30 days in administrative segregation. (*Id.*).

10.    While Bruton was in administrative segregation, the Alternative to Violence Project ("AVP") began its Basic workshop on July 14, 2006. Because Bruton

was serving a disciplinary sanction for his institutional misconduct he was unable to participate in the July AVP Basic workshop.  (Minor Affidavit at ¶ 9).  Thus Bruton had to wait until the next scheduled workshop to enroll in AVP.

11.    In late September-early October 2006, after his release from administrative segregation, Bruton was scheduled to attend another AVP Basic workshop.  (Ex. H).  Bruton completed the AVP Basic workshop on October 1, 2006.  (Minor Affidavit at ¶ 10).  That same day Bruton sent a letter to Defendant Minor asking her if he was going to receive a review by the Parole Board.  Defendant Minor responded to Bruton's inquiry informing him that she would request that a counselor review his case status with him.  (Ex. I).

12.    Impatient to hurry the process along, Bruton sent Defendant Minor, in the course of a few weeks, several more letters expressing his desire to immediately be seen by the MDT Board and the Parole Board.  (Exs. J and K).  Defendant Minor informed Bruton that his request to defer his parole hearing had caused a delay and that a staff member would review his case status with him.  (Minor Affidavit at ¶ 10-12; Exs. J and K).

13.    In his quest to have his wishes granted immediately, Bruton ignored Defendant Minor's responses and her requests for him to be patient.  Instead, on December 27, 2006, Bruton filed a Complaint initiating the above-captioned litigation.  In his Complaint Bruton alleges that the Defendants violated his due process rights by refusing to allow him to move forward with his MDT Board hearing and his Parole Board hearing.  (D.I. 2).  On January 24, 2007, less than one month after filing his Complaint, Bruton filed the Motion for Preliminary Injunction.

14.     At no time between the Parole Board's decision in 2005 and the filing of his Complaint or his Motion for Preliminary Injunction did Bruton complete an anger management class as recommended by the Parole Board.  (Minor Affidavit at ¶ 13).

15.     Moreover, between the time of the Parole Board's 2005 decision and the filing of his Complaint and his Motion for Preliminary Injunction, Bruton incurred three (3) Class 1 write ups and one (1) twenty-four hour loss of all privileges for institutional misconduct in violation of the Parole Board's recommendations.  (Minor Affidavit at ¶ 13).

16.     On March 7, 2007, prior to Bruton serving the State Defendants with the Complaint[2], the Multi-Disciplinary Team ("MDT") Board at Howard Young held a hearing, in accordance with procedure, to determine its recommendation to the Parole Board regarding Bruton's request for parole.  At the hearing the MDT Board voted 3 to 0 not to recommend Bruton for parole.  (Ex. L).  The MDT Board based its decision on Bruton's failure "to abide by previous Parole Board recommendations."  (*Id.*).  The MDT Board also found that Bruton still does not take responsibility for his offenses.  (Minor Affidavit at ¶ 14).  A pre-parole report that included the MDT Board's recommendation to deny parole was then sent to the Parole Board.  (Minor Affidavit at ¶ 15).

---

[2] Defendant Williams was served with the Complaint on May 16, 2007.  Both Defendant Minor and Defendant Regan were served with the Complaint on May 21, 2007.

17.     On March 28, 2007 the Parole Board received Bruton's pre-parole report.  (Minor Affidavit at ¶ 16).  Since receiving the pre-parole report, the Parole Board has scheduled Bruton for a parole hearing that will take place within the coming months.[3]

18.     By his Motion for Preliminary Injunction, Bruton asserts that the Defendants have "denied plaintiff his constitutional right to proceed onward to his MDT Hearing and forward to his Board of Parole Hearing."   (Motion for Preliminary Injunction at ¶ 1).  State Defendants contend that this Court should deny the Motion because:  a). Bruton appeared before the MDT Board in March 2007 and has been scheduled to appear before the Parole Board in the near future, therefore his request for preliminary injunction is moot; b). State Defendants have not violated Bruton's due process rights and Bruton has no constitutional right to parole, thus he is not likely to succeed on the merits of his claims; and c). Bruton is still eligible to apply for parole, therefore denial of the preliminary injunction will not result in irreparable harm.  This is State Defendants' Response in Opposition to the Motion for Preliminary Injunction.

I.      **Bruton Is Scheduled To Appear Before The Parole Board For A Parole Hearing, Therefore His Request For Preliminary Injunction Is Moot.**

19.     In the Motion Bruton asks the Court to order "defendants, successors, agents, employees, and all persons acting in concert with them to provide plaintiff with a MDT Hearing and send the results to the Board of Parole, which will allow plaintiff to received [sic] a Parole Date, and onward to a scheduled Board of Parole

---

[3] Due to security concerns the Parole Board does not disclose parole hearing dates to inmates far in advance of the hearing date.  If the Court would like to know Bruton's exact parole hearing date that information will be provided at the Court's request.

Hearing." (Motion for Preliminary Injunction at ¶ "Wherefore"). Bruton, however, has already received the relief he is requesting.

20.     In April 2006 Bruton asked to defer his parole hearing until he had an opportunity to complete the recommendations of the Parole Board. (Ex. F). At that time the State Defendants yielded to Bruton's request and informed the Parole Board of his request to defer. (Minor Affidavit at ¶ 7).

21.     In 2006, Bruton completed the Key Program and the AVP Basic workshop. Bruton, however, did not take any anger management classes. Moreover Bruton received several write ups for institutional misconduct.

22.     In spite of Bruton's failure to follow all of the Parole Board's recommendations, on March 3, 2007 the MDT Board held a hearing to determine whether to recommend Bruton for parole. At the hearing the MDT Board voted 3 to 0 not to recommend Bruton for parole. A pre-parole report that included the MDT Board's recommendation to deny parole was then sent to the Parole Board.

23.     On March 28, 2007 the Parole Board received the MDT Board's pre-parole report. The Parole Board has since scheduled Bruton for a parole hearing within the coming months. Because Bruton has appeared before the MDT Board and is scheduled to appear before the Parole Board, his Motion for Preliminary Injunction asking to appear before the Parole Board should be denied as moot.

**II.     Bruton Cannot Satisfy The Requirements For Injunctive Relief, Therefore The Court Should Deny The Motion.**

24.     Assuming, *arguendo*, that his Motion for Preliminary Injunction is not moot, this Court should deny Bruton's Motion because he cannot meet his burden for injunctive relief.

25.    A grant of injunctive relief is an extraordinary remedy.  Thus a request for injunctive relief should only be granted in limited circumstances.  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989).

26.    The Third Circuit holds that a district court should grant a request for preliminary injunction only if "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest."  *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998).  An injunction should only issue if all four factors favor relief.  *See S & R Corporation v. Jiffy Lube International, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

27.    To obtain a preliminary injunction Bruton must satisfy all four factors.  If he cannot prove that he has a likelihood of success on the merits of his claim or that he is likely to suffer irreparable injury, the request for preliminary injunction should be denied.  *See Instant Air*, 882 F.2d at 800.

> **A.    State Defendants followed the proper procedure for Bruton's parole hearing, therefore they have not violated his due process rights and the Motion should be denied.**

28.    The State Defendants followed the proper procedures for affording Bruton access to the Parole Board, therefore Bruton is not likely to succeed on his claim that the State Defendants have denied him due process.

29.    In February 2005 Bruton had a hearing before the Parole Board. At the hearing the Parole Board denied Bruton's request for parole but issued certain recommendations for him to follow before his next parole hearing.

30.    Over a year later, in April 2006, Bruton wrote a letter asking the State Defendants to defer his parole hearing until he had an opportunity to complete the February 2005 recommendations of the Parole Board.  (Ex. F).  At that time Defendant Minor verified Bruton's request with him and then informed the Parole Board of his request to defer.  (Minor Affidavit at ¶ 7).

31.    During the course of this deferral period, Bruton incurred a write up for disorderly/threatening behavior that resulted in a 30 day sanction.  As a result of the sanction Bruton could not participate in the July AVP Basic workshop and was required to wait until the next available workshop.

32.    In late September-early October 2006, Bruton entered and completed the AVP Basic workshop.  Bruton, however, did not complete an anger management class as recommended by the Parole Board.  Moreover Bruton continued to incur write ups for disciplinary behavior in violation of the advice of the Parole Board.

33.    Despite Bruton's failure to follow the Parole Board's recommendations, on March 3, 2007 the MDT Board held a hearing to determine its recommendation for Bruton's parole request.  At the hearing the MDT Board voted 3 to 0 not to recommend Bruton for parole.  A pre-parole report containing the MDT Board's recommendation was then sent to the Parole Board.  The Parole Board has since scheduled a parole hearing for Bruton which will occur in the coming months.

34.    It is clear that the State Defendants have not denied Bruton due process.  Rather, the delay, if any, in the parole process is a direct result of Bruton's request for deferral of his parole hearing, his institutional misconduct and his failure to

follow the Parole Board's recommendations.  Therefore Bruton cannot succeed on the merits of his claim and the Motion should be denied.

> **B.**    **Bruton does not have a constitutional right to parole, thus he is unlikely to succeed on the merits of his claim and his request for preliminary injunction should be denied.**

35.    Bruton's underlying claim is that the Defendants denied him due process by failing to allow him to proceed with the parole process.  (D.I. 2).  Bruton, however, cannot establish that he is entitled to injunctive relief because there is no constitutional right to parole.

36.    In *Eskridge v. Casson*, 471 F.Supp. 98 (D. Del. 1979), this Court held that the Delaware Parole statute does not confer upon a prisoner "a legally enforceable right to be paroled." *Id.* at 101.  Therefore Bruton has no constitutional right to parole.  *See also Owens v. Ryan*, 2000 WL 1728263, at *3 (D. Del. April 10, 2000). (Ex. M).  Given that Bruton has no constitutional right to parole he is not likely to succeed on the merits of his claim and the Motion for Preliminary Injunction should be denied.

37.    Bruton may argue that he has a "substantive due process right in being treated fairly during the parole process." *Owens*, 2000 WL 1728263, at *3. Bruton's substantive due process rights, however, have not been violated.  The State Defendants have treated Bruton fairly throughout his parole process.  Any delay that occurred in the process is clearly attributable to Bruton's request to defer his parole hearing, his repeated receipt of write ups for institutional misconduct and his refusal to follow the Parole Board's recommendations.  Because the State Defendants have treated

Bruton fairly throughout the parole process he cannot prove that they violated his substantive due process rights and this Court should deny the Motion.

      **C.**      **Bruton is still eligible for parole, therefore he will not suffer irreparable injury if the Court denies his request for preliminary injunction.**

      38.      To demonstrate irreparable injury a plaintiff must prove "more than a *risk* of irreparable harm …." *Continental Group, Inc. v. Amoco Chemicals Corp*., 614 F.2d 351, 359 (3d Cir. 1980) (emphasis added). Injunctions are not issued to eliminate a possibility of a remote future injury. *Id.* Rather, an injunction is used where the movant has shown that he "is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). Moreover, injunctive relief is used to prevent definite future harms, not to remedy past violations. *See SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980).

      39.      Bruton is not in danger of suffering irreparable harm. As has already been demonstrated Bruton has received his MDT Board hearing and has been scheduled for a parole hearing. Further, even if Bruton is denied parole, the State Defendants have not prevented him from applying for and receiving a parole hearing some time in the future. Therefore Bruton will not suffer irreparable injury if the Court denies the Motion.

WHEREFORE, State Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Preliminary Injunction.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**


*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Carvel State Office Building, 6th Floor
820 N. French Street
Wilmington, DE  19801
(302) 577-8400
Attorney for Defendants Pamela Minor,
Cheryl Regan and Raphael Williams

Dated: June 6, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RAYMOND L. BRUTON,          )
                                      )
         Plaintiff,           )
                                      )
                                      )     Civil Action No. 06-791-SLR
      v.                      )
                                      )     Jury Trial Requested
                                      )
MRS. PAMELA A. MINOR, MRS.    )
CHERYL REGAN, MR. STANLEY W.   )
TAYLOR, and WARDEN RAPHAEL    )
WILLIAMS,                    )
                                      )
         Defendants.       )

## <u>ORDER</u>

Upon the Plaintiff's Motion for Preliminary Injunction (D.I. 6 & 7), and State Defendants Pamela A. Minor, Cheryl Regan and Warden Raphael Williams's Response in Opposition to Plaintiff's Motion for Preliminary Injunction; and it appearing that good and sufficient notice of Plaintiff's Motion and State Defendants' Response has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**.

SO ORDERED this _____ day of _____, 2007.

_____
The Honorable Sue L. Robinson
United States District Court Judge

# <u>CERTIFICATE OF SERVICE</u>

I, Erika Y. Tross, Esq., hereby certify that on June 6, 2007, I caused a true and correct copy of the attached *State Defendants Pamela A. Minor, Cheryl Regan and Warden Raphael Williams's Response in Opposition to Plaintiff's Motion for Preliminary Injunction [Re: D.I. 6 & 7]* to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Inmate Raymond L. Bruton, Sr.
SBI #00069025
Howard R. Young Correctional Institution
P.O. Box 9279
Wilmington, DE 19809

**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400