**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RAYMOND L. BRUTON,       )
                                   )
        Plaintiff,       )
                                   )
                                   )   Civil Action No. 06-791-SLR
        v.                 )
                                   )   Jury Trial Requested
                                   )
MRS. PAMELA A. MINOR, MRS.     )
CHERYL REGAN, MR. STANLEY W.   )
TAYLOR, and WARDEN RAPHAEL    )
WILLIAMS,                         )
                                   )
        Defendants.    )

**DEFENDANTS PAMELA MINOR, CHERYL REGAN
AND RAPHAEL WILLIAMS'S OPENING BRIEF IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**DEPARTMENT OF JUSTICE
STATE OF DELAWARE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Carvel State Office Building, 6th Floor
820 N. French Street
Wilmington, DE  19801
(302) 577-8400
Attorney for Defendants Pamela Minor,
Cheryl Regan and Raphael Williams

Dated: February 7, 2008

## TABLE OF CONTENTS

Table of Citations ……………………………………………………............    iii

Nature and Stage of the Proceedings …………………………………………    1

Summary of the Argument ………………………………………………………    3

Statement of the Facts …………………………………………………………...    5

Argument ………………………………………………………………………..    10

    I.    The Defendants Are Immune From Liability In Their Official Capacities Pursuant To The Eleventh Amendment. …………………    11

    II.    The Allegations In Bruton's Complaint Are Moot Given That The Parole Board Granted Bruton's Request For Parole And He Has Begun Serving His Level 4 Time. ……………………………………    13

    III.    Bruton Cannot Establish A Claim Against Warden Williams Where The Warden Had No Personal Involvement In Bruton's Parole Process And Was Not Deliberately Indifferent To Bruton's Needs. …    14

        A.    The record is devoid of any evidence that shows that Warden Williams was personally involved in Bruton's parole process..    15

        B.    Warden Williams cannot be held liable for the actions of Defendants Minor and Regan where there is no proof that he was deliberately indifferent to Bruton's plight. ………………    17

    IV.    The Defendants Did Not Violate Bruton's Due Process Rights Where Bruton Did Not Have A Protected Liberty Interest In Receiving Parole And There Is No Evidence To Show That The Process Was Improper Or That The Defendants Treated Bruton Unfairly. ………...    18

        A.    Bruton cannot support a claim for violation of his procedural due process rights where he does not have a constitutional or state-created protected liberty interest in parole and where the process the Defendants used was proper and fair. ……………    19

        B.    Bruton cannot prove that the Defendants violated his substantive due process rights given that the Defendants treated him fairly throughout the parole process. ……………...    22

i

V.     The Defendants Are Immune From Liability In Their Individual
       Capacities Pursuant To The Doctrine Of Qualified Immunity. ………   23

Conclusion …………………………………………………………………………   26

## TABLE OF CITATIONS

<u>**Cases**</u>

*Anderson v. Creighton,*
      483 U.S. 635 (1987) ………………………………………........... 23-24

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986) ………………………………………........... 10, 18

*Board of Regents of State Colleges v. Roth,*
      408 U.S. 564 (1972) ………………………………………... 19

*Brookins v. Williams,*
      402 F.Supp.2d 508 (D. Del. 2005) …………………………………… 15, 17

*Carter v. Exxon Company USA,*
      177 F.3d 197 (3d Cir. 1999) …………………………………........... 10

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986) ………………………………………... 18

*City of Erie v. Pap's A.M.,*
      529 U.S. 277 (2000) ………………………………………... 13

*Edelman v. Jordan,*
      415 U.S. 651(1974) ……………………………………………… 11-12

*Eskridge v. Casson,*
      471 F.Supp. 98 (D. Del. 1979) …………………………………... 20, 22, 25

*Gay v. Petsock,*
      917 F.2d 768 (3d Cir. 1990) …………………………………........... 15

*Grant v. City of Pittsburgh,*
      98 F.3d 116 (3d Cir. 1996) …………………………………………… 24

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,*
      442 U.S. 1 (1979) ………………………………………... 19

*Hafer v. Melo,*
      502 U.S. 21 (1991) ………………………………………. 12

*Harlow v. Fitzgerald,*
      457 U.S. 800 (1982) ………………………………………........... 23

*Kentucky Dept. of Corrections v. Thompson*,
    490 U.S. 454 (1989) …………………………………………………...      19

*Owens v. Ryan*,
    2000 WL 1728263 (D. Del. Apr. 10, 2000) ………………………………...      20

*Pennsylvania v. Porter*,
    659 F.2d 306 (3d Cir. 1981) ……………………………………..............      15

*Rode v. Dellarciprete*,
    845 F.2d 1195 (3d Cir. 1988) ………………………………….............      15, 17

*Saucier v. Katz*,
    533 U.S. 194 (2001) ……………………………………………..........      24

*Sample v. Diecks*,
    885 F.2d 1099 (3d Cir. 1989) …………………………………………      17

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1996) …………………………………………………….      12

*Scott v. Harris*,
    -- U.S. --, 127 S.Ct. 1769 (2007) ……………………………………………      18, 24

*Vick v. Haller*,
    512 A.2d 249 (1986) ……………………………………………..      23-24

*Will v. Michigan Dept. of State Police*,
    491 U.S. 58 (1989) …………………………………………………........      12

*Winsett v. McGinnes*,
    617 F.2d 996 (3d Cir. 1980) …………………………………………...      19

## <u>Statutes, Rules and Other Authority</u>

42 *U.S.C.* § 1983 ………………………………………………………      *passim*

Federal Rule of Civil Procedure 56(c) ……………………………………...      10

U.S. Constitution, Eleventh Amendment ……………………………………...      11

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Raymond L. Bruton ("Bruton" or "Plaintiff") is an inmate presently incarcerated at the Plummer Community Correctional Center in Wilmington, Delaware. He is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

On December 27, 2006, Bruton filed a Complaint pursuant to 42 *U.S.C.* § 1983 against Defendants Pamela Minor, Cheryl Regan, Stanley Taylor, and Raphael Williams claiming that the defendants were violating his constitutional rights by denying him a right to participate in the parole process and have a hearing before the Delaware Board of Parole (the "Parole Board").  (D.I. 2).

Less than one month later, on January 24, 2007, Bruton filed a Motion for Preliminary Injunction and a brief in support asserting that he was "un-stisfied [sic] with Mrs. Miners objective out look regarding his Board of Parole procedures."  (D.I. 6 at ¶ 4). Bruton further asserted that the defendants had denied him "his constitutional right to proceed onward to his MDT hearing and forward to his Board of Parole Hearing."  (D.I. 6, at ¶ 1).

On or about May 10, 2007, Bruton served defendants Pamela Minor, Cheryl Regan and Raphael Williams with a copy of the Complaint and the Motion for Preliminary Injunction.  (D.I. 14-16).  Bruton never served Stanley Taylor with the Complaint.  Therefore the Court dismissed all claims against Taylor on November 13, 2007.  (D.I. 35).  The only remaining defendants are Minor, Regan and Williams (hereinafter, the "Defendants").

Shortly after receiving service, the Defendants filed a timely response in opposition to the Motion for Preliminary Injunction.  (D.I. 18).  In their response the

1

Defendants asserted, *inter alia*, that Bruton's allegations were moot because he had received a date for his Parole Board hearing. The Court agreed with the State Defendants and denied the Motion for Preliminary Injunction on June 13, 2007. (D.I. 19). Specifically the Court held that Bruton had received the relief he requested and that his motion for preliminary injunction was moot. (D.I. 19 at ¶ 3).

After the Court entered its order the Defendants filed an Answer denying the allegations in the Complaint and asserting several defenses and affirmative defenses. (D.I. 20, filed July 5, 2007).

On July 26, 2007, the Court issued a scheduling order governing the management of the case. (D.I. 21). In its order the Court set the deadline for discovery as November 23, 2007. In addition the Court ordered the parties to file all case dispositive motions by December 24, 2007. (*Id.*).

Defendants issued discovery requests to the Plaintiff on August 31, 2007. (D.I. 27). After requesting and receiving two extensions of time to respond (D.I. 35, 38), Bruton finally responded to the Defendants' discovery requests on January 17, 2008. (D.I. 39). As a result of Bruton's delayed responses, the Court extended the time for the parties to file case dispositive motions until February 7, 2008. (*See* D.I. 38). This is the Defendants' Opening Brief in Support of their Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

1.      The Defendants are not considered "persons" for purposes of 42 U.S.C. § 1983.  As a result, the Eleventh Amendment and the doctrine of sovereign immunity protect the Defendants from liability for Bruton's claims.  Therefore this Court lacks jurisdiction over the Defendants in their official capacities and Bruton cannot maintain his claims against the Defendants in their official capacities.

2.      Bruton has received a hearing before the MDT Board and the Parole Board.  After his hearings, the Parole Board voted to grant Bruton parole.  Bruton received the relief requested by his Complaint and there is no longer a "live" controversy between the parties.  Therefore Bruton's claims are now moot.

3.      Bruton cannot maintain a section 1983 action against Defendant Williams. Defendant Williams had no personal involvement in the alleged wrongs Bruton claims he suffered.  Moreover, Bruton's claims against Defendant Williams are based solely on the Warden's supervisory responsibilities.  Because Bruton cannot maintain an action under § 1983 against Defendant Williams solely on the theory of respondeat superior, and because Defendant Williams was not deliberately indifferent to Bruton's plight, Bruton cannot support his claims against Defendant Williams and summary judgment is proper.

4.      Bruton does not have a constitutional or state-created right to parole. Given that Bruton has no right to parole, he does not have a protected liberty interest in receiving parole or in receiving a hearing before the Parole Board.  Therefore Bruton cannot support his claims against the Defendants for violation of his due process rights and the Court should grant the Defendants judgment as a matter of law.

5.    The Defendants properly performed their duties without violating Bruton's clearly established constitutional rights. Therefore the Defendants are protected from liability in their individual capacities for Bruton's claims by the doctrine of qualified immunity.

## STATEMENT OF THE FACTS

On March 15, 2000, Plaintiff Raymond L. Bruton began serving a sentence of twelve (12) years, seven (7) months, and nineteen (19) days for Violation of Parole for delivery of heroin and Violation of Parole for escape after conviction. The maximum end date for Bruton's sentence was November 2, 2012. (Appendix, hereinafter "A-" at 70).

Several years after his conviction, Bruton began the process of petitioning the Delaware Board of Parole (the "Parole Board") for release to parole supervision. On November 19, 2002, the Parole Board met for a decision on Bruton's parole request. The Parole Board denied Bruton's request by a vote of 4 to 0 based upon Bruton's inability to accept responsibility for his offense, his substance abuse history, his disruptive institutional behavior, and the fact that the institution where he was housed did not recommend parole. (A-71). The Parole Board informed Bruton that he would be eligible for parole consideration again "at anytime after the expiration of twenty-four (24) months." (*Id.*). Thus Bruton was eligible to receive a rehearing for parole in or after November 2004. (*Id.*).

Despite the Parole Board's order that he was eligible for parole after November 2004, Bruton impatiently applied for an early parole eligibility date in 2003. (A-72). In an order dated October 29, 2003, the Parole Board denied Bruton's request for an early parole eligibility date and ordered Bruton to reapply at his regular parole eligibility date of November 2004. (*Id.*).

On February 8, 2005, the Parole Board met for a regular parole hearing to determine whether to release Bruton to parole supervision. By letter dated March 30, 2005, the Parole Board Chairperson informed Bruton that the Parole Board denied his

request for parole by a vote of 5 to 0.  The reasons the Parole Board gave for the denial were Bruton's prior failure of parole/probation, significant criminal history, substance abuse history, inability to accept responsibility for his offense and disruptive institutional behavior.  (A-73).  The Parole Board recommended that Bruton, "work with [his] counselor to develop a plan for continued mental health, violent offender, and anger management counseling."  (*Id*.).  In addition, the Parole Board ordered that Bruton not petition again for parole consideration until he successfully completed the Key Program and resolved his institutional write-ups.  (*Id*.).

In August 2005 the Delaware Correctional Center ("DCC") transferred Bruton to the Howard R. Young Correctional Institution ("HRYCI").  Sometime after his arrival at HRYCI, Bruton entered the Key Program as required by the Parole Board.  (A-65-69 - "Minor Affidavit" at ¶ 6).

On April 9, 2006, prior to his completion of the Key Program, Bruton sent a letter to C. Pettyjohn requesting deferral of his next parole hearing.  (A-74).  Bruton's request was based on his belief that he had not completed the requirements established by the Parole Board in 2005.  (*Id*.).  Thus Bruton voluntarily chose to wait until he had satisfied the Parole Board's requirements before obtaining another parole hearing.  Defendant Minor confirmed with Bruton his request to defer and then informed the Parole Board Chairperson of the deferral.  (Minor Affidavit at ¶ 7).

On May 26, 2006, Bruton completed the Key Program at HRYCI.  (Minor Affidavit at ¶ 8).  Less than two months later, on July 8, 2006, Bruton received a write-up for institutional misconduct.  (A-75).  After a disciplinary hearing on the write-up Bruton

was found guilty of disorderly/threatening behavior and received a sanction of 30 days in administrative segregation. (A-76).

While Bruton was serving time in administrative segregation for his sanction, the Alternative to Violence Project ("AVP") – one of the treatment programs the Parole Board recommended that Bruton take – began its Basic workshop on July 14, 2006. Because Bruton was serving a disciplinary sanction for his institutional misconduct he was unable to participate in the July AVP Basic workshop. (Minor Affidavit at ¶ 9). Thus Bruton had to wait until he was released from administrative segregation to enroll in the next scheduled AVP workshop.

In late September-early October 2006, after his release from administrative segregation, HRYCI officials scheduled Bruton for an available AVP Basic workshop. (A-77). Bruton completed the AVP Basic workshop on October 1, 2006. (Minor Affidavit at ¶ 10). On the same day he completed the workshop, Bruton sent a letter to Defendant Minor asking her if he was going to receive a review by the Parole Board. (A-78). Defendant Minor responded to Bruton's inquiry and told him that she would request that a counselor review his case status with him. (*Id.*).

Impatient to hurry the process along, Bruton, in the course of a few weeks, drafted several letters demanding to be seen immediately by the MDT Board and the Parole Board. (A-79-87). Defendant Minor informed Bruton that his request to defer his parole hearing had caused a delay and that a staff member would review his case status with him. (Minor Affidavit at ¶ 10-12; A-79-80).

Unsatisfied with the requests for him to be patient, Bruton filed his Complaint initiating the above-captioned litigation on December 27, 2006 – a little over two months after he had completed the AVP workshop.

On March 7, 2007, the Multi-Disciplinary Team ("MDT") Board at HRYCI held a hearing, in accordance with procedure, to determine its recommendation to the Parole Board regarding Bruton's request for parole. At the hearing the MDT Board voted 3 to 0 not to recommend Bruton for parole. (A-88). The MDT Board based its decision on Bruton's failure "to abide by previous Parole Board recommendations." (*Id.*). The MDT Board also found that Bruton continued to refuse to take responsibility for his offenses. (Minor Affidavit at ¶ 14). A pre-parole report that included the MDT Board's recommendation to deny parole was sent to the Parole Board. (Minor Affidavit at ¶ 15).

The Parole Board received the MDT Board's pre-parole report on March 28, 2007. (Minor Affidavit at ¶ 16). Approximately four months later, on July 24, 2007, the Parole Board met to determine whether to grant Bruton parole. At the meeting the Parole Board voted to grant Bruton's request for parole. (A-89). By the terms of the Certificate of Parole, Bruton was "paroled to Level 4 Crest and Level 4 work release until short time release date followed by Level 3." (A-90).

After the Parole Board's decision, Bruton's name was placed on the waiting list for bed space at Level 4. On August 21, 2007, Bruton was transferred to the Webb Correctional Facility while he continued to await bed space for Level 4 at the Plummer Community Correctional Center. On August 29, 2007, bed space became available at the Plummer Center and Bruton was moved there to begin serving his Level 4 time in accordance with the Parole Board's orders. At present, Bruton is housed at the Plummer

8

Center where he continues to serve his Level 4 time.  His current short term release date

is March 22, 2008.  (A-91).

## ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

The record in this case clearly demonstrates that Bruton cannot prove that the Defendants violated his constitutional rights. First, the Defendants are immune from liability for Bruton's claims in both their official and individual capacities. Second, Bruton's claims are moot given that the Parole Board has met and granted Bruton parole. Third, Bruton cannot maintain an action under 42 U.S.C. § 1983 against Warden

10

Williams where the Warden played no affirmative role in the alleged deprivation of Bruton's rights and was not deliberately indifferent to Bruton's plight. Finally, Bruton cannot support a claim for violation of his due process rights where he has no constitutional or state-created right to parole. For all of the foregoing reasons, this Court should grant the Defendants summary judgment on all claims.

I.    **The Defendants Are Immune From Liability In Their Official Capacities Pursuant To The Eleventh Amendment.**

Bruton seeks to hold the Defendants liable in their official capacities for the alleged violation of his constitutional rights. To the extent he seeks to hold the Defendants liable in their official capacities he is prevented from doing so as the Defendants are immune from liability under the Eleventh Amendment.

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Eleventh Amendment does not, by its explicit terms, bar suits against a State by its own citizens, the United States Supreme Court has held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Further, where a State is not a named party in an action a suit may still be barred by the Eleventh Amendment where "'the action is in essence one for the recovery of money from the state,'" because "'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit

even though individual officials are nominal defendants.'" *Id.* (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996). The United States Congress, however, can waive a state's sovereign immunity, and therefore, its Eleventh Amendment immunity, through the Fourteenth Amendment. *Id.* But, only a clear indication of Congress's intent to waive a state's immunity will produce this result. *Id.*

Title 42, section 1983 of the United States Code – the section under which Bruton brings his lawsuit – does not display a clear intent by Congress to waive a state's sovereign immunity. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 *U.S.C.* § 1983. The State of Delaware is not considered a "person" as contemplated by 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore the Eleventh Amendment and the doctrine of sovereign immunity protect the State of Delaware from liability for claims brought by an individual filing a lawsuit pursuant to § 1983. *See, id.*

A suit against a state official in his official capacity is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus an immunity that is available to the State is also available to a state official in his official capacity. *Id.* Under federal law, the Defendants, in their official capacities, like the State of Delaware, are not considered "persons" for the purposes of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. Because the Defendants are not "persons" for purposes of § 1983, the Eleventh Amendment and the doctrine of sovereign immunity protect the Defendants from liability. As a result, this

12

Court lacks jurisdiction over the Defendants in their official capacities, and the Defendants are outside the class of persons subject to liability under § 1983. Therefore Bruton cannot maintain his claims against the Defendants in their official capacities and summary judgment is appropriate.

**II.     The Allegations In Bruton's Complaint Are Moot Given That The Parole Board Granted Bruton's Request For Parole And He Has Begun Serving His Level 4 Time.**

In his Complaint Bruton asserts that the Defendants violated his constitutional rights by not letting him move forward in the parole process. Given that Bruton has since appeared before the Parole Board and been granted parole, his claims are now moot.

"'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal citations omitted). A court should not render a decision on the merits of a claim that is moot because "it becomes impossible for the court to grant 'any effectual relief whatever' to [the] prevailing party." *Id.* (internal citations omitted).

On March 7, 2007, the MDT Board held a hearing at HRYCI to determine its recommendation to the Parole Board regarding Bruton's request for parole. (A-88). At the hearing the MDT Board voted not to recommend Bruton for parole. (*Id.*). A pre-parole report that included the MDT Board's recommendation to deny parole was then sent to the Parole Board. (Minor Affidavit at ¶ 15).

Approximately four months later, on July 24, 2007, the Parole Board met to consider Bruton's request for parole. At that meeting, over the MDT Board's recommendation, the Parole Board voted to grant Bruton parole. (A-89).

13

The Certificate of Parole issued by the Parole Board specifically states that Bruton is to be "paroled to Level 4 Crest and Level 4 work release until short time release date followed by Level 3." (A-90). In accordance with the Parole Board's orders, on August 29, 2007, the Department of Correction moved Bruton to the Plummer Center to begin serving his Level 4 time. (A-91).

Bruton has been given his hearings before both the MDT Board and the Parole Board. Moreover, the Parole Board granted Bruton's request for parole. Since receiving parole, Bruton has been moved to a Level 4 facility to begin serving his Level 4 time in accordance with the Parole Board's orders. As a result of his receipt of a hearing and parole, Bruton no longer has a "live" controversy against the Defendants. Therefore Bruton's claims are now moot.

III.    **Bruton Cannot Establish A Claim Against Warden Williams Where The Warden Had No Personal Involvement In Bruton's Parole Process And Was Not Deliberately Indifferent To Bruton's Needs.**

In his responses to the Defendants' discovery requests Bruton states that he named Warden Williams as a Defendant because the Warden, "knew the defendants were deliberately denying me from going to the MDT Hearing but refuse [sic] to do anything to help me." (A-43). The facts of this case, however, show that Warden Williams had no personal involvement in Bruton's parole process and was not deliberately indifferent to Bruton's needs. Therefore this Court should grant Warden Williams judgment as a matter of law.

### A. The record is devoid of any evidence that shows that Warden Williams was personally involved in Bruton's parole process.

To support a claim for a civil rights violation under § 1983 a plaintiff must show that the accused defendant had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff must prove that the official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) (Garth, J. concurring in part, dissenting in part). In addition, this Court has held that, "Grievances are not enough to impute knowledge to [a] defendant." *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)). Rather to establish liability, a plaintiff must prove that a defendant personally directed, had actual knowledge of, or acquiesced in the alleged deprivation of his constitutional rights. *Rode*, 845 F.2d at 1207. Without such proof the defendant cannot be held liable. *See Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990). In this case Bruton has no proof that Warden Williams was personally involved in the decision to provide him a hearing before the MDT or Parole Boards. Therefore Bruton cannot support his claims against the Warden.

On October 29, 2006, Bruton sent a letter to Pamela Minor regarding his complaints with the parole process. (A-80). Bruton copied the Warden on this letter. Warden Williams responded to Bruton's letter the next day and told Bruton that he was forwarding Bruton's correspondence to the appropriate individual and that he does "not become involved in individual [parole] cases." (A-81).

Despite knowing that the Warden had no involvement in individual parole cases Bruton sent Warden Williams a letter on November 23, 2006 informing the Warden that he was having trouble moving forward with the parole process.  (A-82-83).  He further stated that the Warden is "the head man in charge of this Institution, when you say jump, your complete staff, can 'only' say how high."  (*Id.*).  In response Warden Williams wrote, "It is my understanding that your parole paperwork was started while in the Key Program, but it was deferred pending completion of Key and Anger Management.  Both Ms. Regan and Ms. Minor are aware of your request to move forward with the parole application."  (A-84).  Warden Williams then told Bruton, "It is further noted that both these individuals have responded to you in writing and Ms. Regan has been approached by you on several occasions while on the housing unit.  I suggest you be patient."  (*Id.*).  Thus Warden Williams again informed Bruton that he was not involved in his parole process but that it was his understanding that Bruton's concerns about his parole process were being addressed.

Finally, on December 3, 2006, Bruton wrote a "reply" to Warden William's response and stated that it was his opinion that the parole process was not being followed.  (A-85-86).  He went on to state, "Whatever Mrs. Minor and Ms. Regan are doing makes no sense to me, and I am the one who should be told of what, where and how about this process."  (*Id.*).  Warden Williams responded to Bruton's letter the next day that he "can only alert Ms. Minor to your request and ask her to review your case and take the appropriate action."  (A-87).

Clearly Warden Williams had no involvement in Bruton's ability to proceed with the parole process and obtain a hearing before the Parole Board.  Warden Williams

informed Bruton of this fact.  Further, Bruton's letters to Warden Williams are not sufficient to establish that the Warden was personally involved in Bruton's parole process.  *See, Brookins*, 402 F.Supp.2d at 512.  Bruton cannot provide any evidence that Warden Williams played an affirmative role in the alleged deprivation of his rights or acquiesced in the deprivation of his rights.  Therefore Bruton cannot support a claim against Warden Williams and this Court should grant the Warden judgment as a matter of law.

**B. Warden Williams cannot be held liable for the actions of Defendants Minor and Regan where there is no proof that he was deliberately indifferent to Bruton's plight.**

In a § 1983 action a supervisory official cannot be held liable solely under the theory of respondeat superior.  *Rode*, 845 F.2d at 1207.  Rather, to establish supervisory responsibility a plaintiff must show that the defendant was the moving force behind the alleged constitutional violation.  *Sample v. Diecks*, 885 F.2d 1099, 1116-17 (3d Cir. 1989).  "[A] 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' … has exhibited deliberate indifference to the plight of the person deprived."  *Id.* at 1118.

Bruton cannot demonstrate that Warden Williams was deliberately indifferent to his plight.  There is nothing in the record to establish that Warden Williams delayed Bruton's parole process or instructed Defendants Minor and Regan to delay the process.  There is also no evidence to support Bruton's allegations that Warden Williams ignored his requests.  Rather, the record shows that Warden Williams responded to Bruton's letters regarding the parole process and informed Bruton that he was forwarding his concerns on to the appropriate individuals.  (A-80-87).  Given that Warden Williams

17

forwarded Bruton's concerns about his parole process to the individuals who were responsible for helping Bruton obtain a parole hearing, Bruton cannot prove that Warden Williams was deliberately indifferent to his plight. Therefore there are no facts to support Bruton's claims against the Warden and summary judgment is proper.


**IV.    The Defendants Did Not Violate Bruton's Due Process Rights Where Bruton Did Not Have A Protected Liberty Interest In Receiving Parole And There Is No Evidence To Show That The Process Was Improper Or That The Defendants Treated Bruton Unfairly.**

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, …" which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 249. A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248.

In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S.Ct. 1769, 1776 (2007). In this case, the facts

clearly show that there are no genuine issues of material fact as to Bruton's claims. Therefore this Court should grant the Defendants' Motion for Summary Judgment.

### A.  Bruton cannot support a claim for violation of his procedural due process rights where he does not have a constitutional or state-created protected liberty interest in parole and where the process the Defendants used was proper and fair.

Bruton claims that the Defendants denied him due process by failing to allow him to proceed with the parole process.  (D.I. 2).  Bruton, however, cannot prove his claims for two reasons – 1) Bruton does not have a protected liberty or property interest in receiving parole; and 2) the facts do not support Bruton's bald allegations.

The right to procedural due process applies only to the deprivation of interests and rights encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  The range of interests protected by the Fourteenth Amendment is not infinite.  *Id.* at 570.  Rather, "an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  "Protected liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of the States.'"  *Id.*

The possibility that a state will award an inmate parole is "no more than a mere hope that the benefit will be obtained."  *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11 (1979).  The Constitution does not create a right or protected liberty interest in an inmate entering a discretionary parole release program. *Winsett v. McGinnes*, 617 F.2d 996, 1005 (3d Cir. 1980).  As such the Due Process Clause is not the source of Bruton's liberty interest.  Therefore, if Bruton is going to

19

establish that he has a protected liberty interest in receiving parole and a parole hearing he must show that the laws of the State of Delaware created such an interest.

In *Eskridge v. Casson*, 471 F.Supp. 98 (D. Del. 1979), this Court expressly held that the Delaware Parole statute does not confer upon a prisoner "a legally enforceable right to be paroled." *Id.* at 101. Therefore Bruton has no state-created right to parole. *See also Owens v. Ryan*, 2000 WL 1728263, at *3 (D. Del. Apr. 10, 2000) (attached hereto as Exhibit "A"). Given that Bruton does not have "an independently existing nor a state-created liberty interest at stake in the parole release determination" he cannot claim a protected liberty interest in parole or in the parole process. *Eskridge*, 471 F.Supp. at 101. Therefore Bruton cannot prove that the Defendants denied him procedural due process and his claim of "a denial of procedural due process is frivolous." *Id.*

Moreover, even assuming, *arguendo*, that Bruton does have a protected liberty interest in receiving parole, there is nothing in the record to support his assertion that he was denied procedural due process.

Bruton admits that in April 2006 he voluntarily requested to defer his parole hearing to attempt to comply with the recommendations of the Parole Board. (A-74). Defendant Minor verified Bruton's request to defer with him and then informed the Parole Board Chairperson of Bruton's request to defer. (Minor Affidavit at ¶ 7). The Defendants never ordered, pressured or demanded that Bruton defer the process. The request to defer was solely a voluntary request by Bruton.

Bruton's parole process was further delayed by his own actions when he was unable to participate in the first AVP program because he received a write-up for disorderly/threatening behavior that resulted in a 30 day sanction. (A-75-76). There

again the delay in the parole process was due directly to Bruton's actions and not the actions of the Defendants.

The facts, even taken in the light most favorable to the Plaintiff, clearly establish that the Defendants did not deny Bruton due process. Rather, Defendant Minor assisted Bruton in obtaining the programs he needed to meet the Parole Board's recommendations. She also had someone review Bruton's case status so that he could have his hearing before the MDT Board. After these steps were taken, Bruton was able to proceed to his MDT Board and Parole Board hearings. Thus the delay, if any, in the parole process was a direct result of Bruton's request for deferral of his parole hearing and his receipt of a write-up for institutional misconduct.

Bruton's main issue appears to be that the process did not take place on the timetable he desired and in the manner that he wanted. Bruton's impatience with the process, however, does not translate his claim into a constitutional violation. Although the process may not have gone at the speed Bruton would have liked, there is nothing in the record to establish that the Defendants intentionally delayed or impeded Bruton's ability to have a hearing before the Parole Board.

Finally, Bruton cannot prove that, but for the actions of the Defendants, he would have received parole earlier. There is nothing in the record to establish that Bruton could have received a parole hearing on the day he finished his AVP workshop or shortly thereafter. In fact, Bruton has no evidence to show that he would have been scheduled for and received a parole hearing prior to the hearing he actually had in July 2007.

Based on the facts in the record there is nothing to establish that the Defendants violated Bruton's due process rights. Therefore no jury could find in Bruton's favor and this Court should grant the Defendants summary judgment.

**B. Bruton cannot prove that the Defendants violated his substantive due process rights given that the Defendants treated him fairly throughout the parole process.**

The Defendants assert that the record is devoid of any evidence that Bruton had a substantive due process right in his parole process or that the Defendants violated this alleged right.

"[T]he Due Process clause does not provide any substantive protection from state action unless the challenged action deprives the person of a liberty or property interest." *Eskridge*, 471 F.Supp. at 101. As previously established, neither the Constitution nor the laws of the State of Delaware confer upon Bruton a protected liberty or property interest in parole or in the parole process. Therefore Bruton cannot claim any substantive due process rights based on the parole process.

But, even assuming that Bruton does have a substantive due process right in a fair parole process, there is nothing in the record to support the bald assertion that he was treated unfairly. When asked to explain the "problems" he had with Defendants Minor and Regan as mentioned in his Complaint, Bruton writes that the Defendants "took on a sense of entitlement because Plaintiff requested a new direction, because of the length of time state defendants were taking when I requested the deferment." (A-47). Further, when asked how the Defendants denied him the ability to proceed in the parole process Bruton states that they "ignored [his] communications." (A-48). Bruton's assertions, however, are nothing more than conjecture without any supporting facts, evidence or

documentation.   Further, to the extent the Defendants acted in the manner Bruton suggests, these actions do not amount to a due process violation.

The record actually reflects that the Defendants treated Bruton fairly throughout the parole process.  The Defendants accepted Bruton's request to defer his parole hearing. In addition Bruton was permitted to take the necessary programs that met the Parole Board's recommendations.  The Defendants followed the proper procedures concerning Bruton's parole hearing and there is nothing in the record to establish that the Defendants were unfair to Bruton or should have done something different in the process.  Because the Defendants treated Bruton fairly throughout the parole process he cannot prove they violated his substantive due process rights.  Therefore, summary judgment is appropriate.

**V.    The Defendants Are Immune From Liability In Their Individual Capacities Pursuant To The Doctrine Of Qualified Immunity.**

The Defendants are protected from liability for Bruton's claims in their individual capacities by the doctrine of qualified immunity.  The doctrine of qualified immunity holds that government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  State officials are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of discretionary

duties.   *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"   *Saucier v. Katz*, 533 U.S. 194, 200 (2001).   Thus a determination by the district court of whether qualified immunity applies should be made at the earliest possible stage "so that the costs and expenses of trial are avoided where the defense is dispositive."  *Id.* at 200-01.

In deciding a question of qualified immunity a district court is required to consider an initial inquiry:  "Taken in the light most favorable to the party asserting the injury do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201.  "If and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established … in light of the specific context of the case.'"  *Scott*, -- U.S. --, 127 S.Ct. at 1774.   In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Creighton*, 483 U.S. at 640.   In deciding the second issue a district court must ask "whether a reasonable public official would know his or her *specific conduct* violated clearly established rights."  *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996) (emphasis in original).   In this case, the evidence presented clearly shows that the Defendants are entitled to qualified immunity.

The Defendants did not intentionally delay or impede Bruton's parole process. Any delay in the process is directly attributable to Bruton's voluntary request to defer his parole hearing and his subsequent receipt of a sanction for his institutional misconduct. Moreover, there is no evidence to establish that the Defendants treated Bruton unfairly in

24

the process.  Bruton was given an opportunity to take the programs recommended by the Parole Board.  Upon completion of those programs he was scheduled to go before the MDT Board and the Parole Board.  Although the process may not have occurred on the timetable Bruton desired there is nothing in the record to suggest that the process was unfair.  Therefore, the Defendants did not violate Bruton's constitutional rights.

Further, caselaw holds that Bruton does not have a clearly established right to parole.  *Eskridge*, 471 F.Supp. at 101.  Given that there is no clearly established right to parole the Defendants could not have known that their conduct was violating Bruton's rights.

Based upon the facts of this case the Defendants have met the requirements for qualified immunity.  Therefore the Defendants are protected from liability for Bruton's claims in their individual capacities.

## <u>CONCLUSION</u>

Raymond Bruton received a fair and proper parole process. Although the process did not happen at the speed with which Bruton would have liked, the record shows that the Defendants afforded him the opportunity to take the programs required by the Parole Board and have a hearing before the MDT and Parole Boards. The Defendants were patient with Bruton and responded to his many letters regarding his parole process. Although Bruton was impatient and unhappy with the process, Bruton's disgust does not translate into a constitutional claim. The process was slow but it was proper and fair. Therefore Bruton cannot support his claims for violation of his due process rights and this Court should grant the Defendants judgment as a matter of law.

## <u>CERTIFICATE OF SERVICE</u>

I, Erika Y. Tross, Esq., hereby certify that on February 7, 2008, I caused a true and correct copy of the attached ***Defendants Pamela Minor, Cheryl Regan and Raphael Williams's Opening Brief in Support of Their Motion for Summary Judgment*** to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Inmate Raymond L. Bruton, Sr.
SBI #00069025
Plummer Community Correctional Center
38 Todds Lane
Wilmington, DE 19802

**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                  Page 1
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**Owens v. Ryan
D.Del.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Brenda Janice OWENS, Plaintiff,
v.
Patrick J. RYAN, et al., Defendants.
**No. CIV.A. 98-413-GMS.**

April 10, 2000.

Brenda Janice Owens, pro se, Wilmington, Delaware.
Plaintiff.

John A. Eberly, State of Delaware Department of Justice, Wilmington, Delaware. Attorney for Defendants.

MEMORANDUM OPINION

SLEET, District J.

I. INTRODUCTION.

**\*1** At all relevant times leading up to the filing of this lawsuit, Brenda Janice Owens was incarcerated at the Baylor Women's Correctional Center ("BWCI") which is located in New Castle, Delaware.[FN1]In her amended complaint, Owens claims that various officials and employees at the women's prison (as well as the chairperson of the State Board of Parole) violated her constitutional rights by failing to properly notify her of a recent parole hearing. Because she did not have sufficient time to prepare for this hearing, Owens contends, she failed to present her best case for early release. As a result, she claims, her request to modify her sentence was denied. For this alleged wrong, Owens seeks declarative, injunctive,[FN2] and monetary [FN3] relief against the following individuals: Patrick J. Ryan, the warden of BWCI; Marlene Lichtenstadter, the chairperson of the Parole Board; Colleen Schotzberger, a counselor at BWCI and chairperson of the classification team; and Shirley Klein, a records supervisor.

> FN1. As the court will discuss, Owens was recently released from prison, apparently on parole.

FN2. In particular, Owens requests an "injunction ordering th[e] defendants ... [to r]efrain from continuing [her] custody ...." The court will dismiss this claim because Owens cannot achieve through a Section 1983 action what can only be accomplished through a petition for a writ of habeas corpus. *See, e.g., Presier v. Rodriguez,* 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Furthermore, even if Owens could obtain this relief through a federal civil rights action, her request for an injunction has become moot given her release from prison.

FN3. The court will also dismiss all claims for monetary damages brought against the defendants in their official capacities because they enjoy sovereign immunity under the Eleventh Amendment. *See, e .g., Pena v. Gardner,* 976 F.2d 469, 472-73 (9th Cir.1992) (citing, *inter alia, Edelman v. Jordan,* 415 U.S. 651, 663 (1974)); *Orum v. Haines,* 68 F.Supp.2d 726, 729 (N.D.W.Va.1999) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)).

All of these defendants have moved for summary judgment on several grounds. Owens opposes this motion, primarily arguing that there are genuine issues of material fact which prevent the entry of judgment as a matter of law. Owens also claims that she requires additional evidence in order to adequately respond to the issues raised by the defendants. Furthermore, Owens contends, at the very least, she has stated claims upon which relief can be granted. Therefore, she argues, her lawsuit should not be dismissed without first affording her the opportunity to cure any deficiencies in her pleadings.

To an extent, the court agrees. Although several

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

of Owens' claims fail as a matter of law, it would appear that she may be able to allege a set of facts which would entitled her to relief. Thus, while the defendants' motion will be granted in part, the court will afford Owens additional time to refine her surviving allegations. The following sections set for the basis for this decision more thoroughly.

## II. STANDARD OF REVIEW.

At the outset, the court notes that while the defendants claim to have moved for summary judgment, they have argued that Owens has not stated a claim upon which relief can be granted. *Compare* Fed.R.Civ.P. 12(b)(6) (1999) *with* Fed.R.Civ.P. 56(c) (1999). Admittedly, in support of their motion, the defendants did attach material outside the pleadings [FN4] which, in some instances, can provide a basis for converting a motion from one to dismiss to one for summary judgment. *See* Fed.R.Civ.P. 12(b). However, before the court can make this type of conversion, it must ensure that Owens has been given sufficient notice of which legal standard will apply so that she may properly oppose the motion. *See Neal v. Kelly,* 963 F.2d 453, 455-56 (D.C.Cir.1992) (citing *Lewis v. Faulkner,* 689 F.2d 100, 101 (7th Cir.1982)).

> FN4. In particular, they provided an affidavit by Faith Levy (who is not a party to this lawsuit) which disputes many of Owens' allegations.

In opposition to the defendants' motion, Owens has made a number of inter-related arguments which all turn on the differences between the Rule 56 and Rule 12(b) standards. First, Owens has submitted an affidavit of her own which blankety denies that the defendants' version of events is correct. Thus, she claims, there are genuine issues of material fact which preclude the entry of judgment as a matter of law. Next, Owens contends that to the extent that the record evidence fails to create genuine issues of material fact, she has not had sufficient opportunity to obtain the necessary discovery to support her claims. Therefore, she argues, she should be afforded an opportunity to obtain this evidence before the court rules on the pending motion. *See* Fed.R.Civ.P. 56(f) (1999). Finally, Owens claims that, at a minimum, the court should not dismiss her complaint because it does not appear beyond a doubt that she can prove no set of facts which would entitled her to relief. *See, e.g* ., *Haines v. Kerner,* 404 U.S. 519, 521

(1972) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**\*2** In light of these arguments, the court will first examine Owens' allegations to determine whether she has stated a claim upon which relief can be granted.[FN5] To the extent that Owens' amended complaint can survive a motion to dismiss, the court will then consider whether her claims are supported by sufficient evidence. In making this determination, the court will also consider whether Owens should be afforded the opportunity to obtain additional discovery so that she can better support her claims. With this approach in mind, the court turns to a discussion of the relevant facts.

> FN5. In conducting this analysis, the court must accept all of Owens' factual allegations as being true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Moreover, because she is proceeding *pro se,* the court must interpret Owens' allegations liberally. *See Zilch v. Lucht,* 981 F.2d 694, 694 (3d Cir.1992) (citing *Haines,* 404 U.S. at 520). For this reason, the court can only dispose of Owens' claims if it appears "beyond a doubt" that she can prove no set of facts that would entitle her to relief. *See Graves,* 117 F.3d at 726 (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Nami,* 82 F.3d at 65 (citing same).

## III. BACKGROUND.

In 1993, Owens began serving a prison sentence at BWCI. After five years, the prison's multi-disciplinary team unanimously voted to modify Owens' sentence in light of her "exceptional rehabilitation." One month later, in December of 1997, this modification was unanimously approved by the prison's classification board. According to Owens, she then waited for someone at the prison to inform her of the date for her parole hearing.

Owens contends that, around this time, she spoke with Levy who informed her that her hearing would be held in two or three months. Although the parties dispute the circumstances surrounding this conversation, Levy does admit that she did not provide Owens with the specific date of this hearing. Instead, Levy has stated that she provided Owens

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

with an "approximate date." According to Levy, as a matter of prison policy, inmates cannot be given the exact date of their parole hearings because the disclosure of this type of information would pose a security risk and possibly endanger the safety of the correctional officers charged with transporting the prisoners to the facility where the hearings are held.

On March 10, 1998, a correctional officer informed Owens that her parole hearing would commence in ten minutes. Apparently, it was going to be conducted through the use of video-conferencing. According to Owens, this was the first (and only) time that she had been given a specific date and time for her hearing. Because she was not adequately prepared for her hearing, Owens contends, her request for a sentence modification was denied. Owens claims that if she had received sufficient notice of this hearing, she could have better prepared herself for and presented herself to the Parole Board. Owens also claims that, with advance notice of the hearing, she could have arranged for favorable witnesses to either testify or send letters on her behalf. As a result, she claims, she might have been paroled.

Owens further contends that, as her acting counselor, Schotzberger was obligated to give her sufficient notice of her hearing.[FN6] Instead, however, Owens claims, in response to each one of her requests for her hearing date, Schotzberger simply stated that this information was "not available." After reviewing the record, it seems that Schotzberger responded in this manner because Klein, the records supervisor, failed to forward the hearing notice to the counselor's office. According to Owens, after the Parole Board denied her request, she wrote to Ryan to inform him of the situation and to ask for a new parole hearing. While Ryan appears to have written a letter to Lichtenstadter to inform her of Owens' situation, it seems that she was not immediately given a new parole hearing. This lawsuit followed.

> FN6. Apparently, during the time leading up to her hearing, Owens' regular counselor was on medical leave.

*3 On March 9, 2000, Owens submitted a letter to the court, stating that her address had changed. Apparently, she is no longer incarcerated that the BWCI. Instead, it appears as if she now resides in Wilmington, Delaware.

IV. DISCUSSION.

In her amended complaint, Owens claims that the defendants violated a number of her constitutional and statutory rights while they were acting under the color of state law. See 42 U.S.C. § 1983 (1994). Although she has brought six separate claims against the defendants, they all arise out of the same allegedly unconstitutional conduct.

Specifically, Owens claims that she was treated differently than other inmates at BWCI who were also being considered for parole. According to Owens, unlike these inmates, she was not given sufficient notice of her parole hearing or any assistance in preparing for this hearing. As a result, she contends, she was not adequately prepared for her appearance before the Board. Consequently, she contends, her request to modify her sentence was denied. Owens claims that her request probably would have been granted if she had been given sufficient time and assistance to properly prepare for the hearing. At a minimum, she argues, she would have been able to present witnesses and other evidence on her behalf at the hearing. Finally, Owens appears to take issue with the way in which her hearing was held. Specifically, she claims that because it was conducted through video-conferencing, she was denied the opportunity to fully interact with the members of the Parole Board.

When viewed in this light, Owens' claims can be broken down into the following three categories:
(A) allegations that the events leading up to her parole hearing violated her constitutional rights to due process and equal protection because she was not given sufficient notice of her hearing and because the assistance she received prior to her hearing differed significantly from other inmates;
(B) allegations that the events at the parole hearing violated her constitutional and statutory rights to personally appear before the Board and present witnesses and other evidence on her behalf;
(C) allegations that the decision of the Parole Board to deny her request to modify her sentence violated her constitutional rights and her liberty interests because it was arbitrary and capricious and based on impermissible factors.

The court will address each one of these claims in turn.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

A. The Events Leading Up To Owens' Parole Hearing.

According to Owens, her constitutional rights to due process and equal were violated because she did not receive sufficient notice of her parole hearing and because other inmates received much more assistance in preparation for their hearings than she did.

1. Owens' due process claims.

As the defendants point out, Owens has no constitutional right to parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979)* ("A state may ... establish a parole system, but it has no duty to do so."); *see also Eskridge v. Casson, 471 F.Supp. 98, 101 (D.Del.1979)* ("[N]o prisoner can legitimately claim that the Delaware Parole Statute confers ... a legally enforceable right to be paroled."). Nevertheless, the Third Circuit has held that "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980).* In this respect, Owens has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn, 975 F.Supp. 761, 764-65 (E .D. Pa.1997),* aff'd,151 F.3d 1025 (3d Cir.1998); *accord Bermudez v. Duenas, 936 F.2d 1064, 1069 (9th Cir.1991)* (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees.' ") (quoting *Greenholtz, 442 U.S. at 12).* In addition, to the extent that the State convenes a parole hearing, it would appear that Owens has a procedural due process right to be provided with meaningful or adequate notice of this hearing. *Cf. Greenholtz, 442 U.S. at 14* (holding that a system which informs inmates of the month of their parole hearing provides them with "constitutionally adequate" notice); *Patten v. North Dakota Parole Bd., 783 F.2d 140, 143 (8th Cir.1986)* (concluding that even though "no process was due" because the state "ha[d] not created a protected liberty interest in parole," inmates received "ample opportunity" to present their cases to the parole board).

*4 Here, Owens claims that she did not receive meaningful notice of her parole hearing. As previously discussed, Owens contends that although she was told in late December or early January that her hearing would be held in two or three months, she only learned of the exact date and time of her hearing ten minutes before it was scheduled to occur.

Citing *Greenholtz,* the defendants point out that the Supreme Court has approved of procedures which only inform inmates of the month of their parole hearing because this type of advance notice afforded the prisoners sufficient time to obtain favorable letters or secure other statements. 442 U.S. at 14 n. 6. Because Owens was effectively told that her hearing would occur in March or April, the defendants argue, she had a sufficient amount of time to begin preparing herself for her appearance before the Board of Parole.

To a degree the defendants are correct. When Owens was told that her parole hearing would occur in two or three months, she should have begun preparing for a March or April appearance before the Parole Board. From this perspective, she had ample time to arrange for letters or other statements to be submitted on her behalf. She also had the opportunity to begin preparing herself for the hearing.

However, Owens has alleged that, between January and February, she asked her counselor "on a few occasions" whether she knew when the parole hearing would be held. It appears that Owens last asked Schotzberger this question the week before her hearing occurred. Owens claims that, in response to these inquiries, she was told that the information that she was requesting about her hearing was "not available." Given the nature of this response, it is possible that Owens was under the impression that the information was not available because her hearing had not yet been scheduled. However, Owens' contentions on this point are not exactly clear.

Of course, given the allegations, it would seem that Schotzberger's failure to provide Owens with better notice of her parole hearing was, at most, negligent because the counselor was relying on the records supervisor to forward this notice to the appropriate individuals once it arrived at BWCI. Because mere negligence on the part of a prison official cannot serve as the basis for imposing liability under Section 1983, *see, e.g., Davidson v. Cannon, 474 U.S. 344, 347 (1986)* (relying *Daniels v. Williams, 474 U.S. 327, 331-33 (1986)),* it would appear that this claim should be dismissed. Furthermore, it would seem that Owens' due process

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

claim against Klein, the records supervisor, should also be dismissed because there is no indication (or, for that matter, even an allegation) why she failed to forward this notice on to Schotzberger. Thus, Klein's conduct would also appear to have been, at most, negligent.

However, because it is possible that Owens is claiming that these individuals acted with a more culpable state of mind, the court will afford her the opportunity to clarify her allegations. Owens should also provide all of the facts which support her contentions.[FN7] The court will afford her sixty days to make these changes to the amended complaint.

> FN7. In light of this ruling, the court will deny the defendants' motion for a protective order and grant Owens' motion to compel as they relate to Question Nos. 1-8 which are listed in her first set of interrogatories. Through these questions, Owens seeks to obtain information concerning the events leading up to her parole hearing.

The court will also deny the defendants' motion for a protective order and grant Owens' motion to compel as they pertain to the Item No. 1 which is listed in her first request for production of documents. Through this request, Owens seeks to obtain a copy of the letter which the Parole Board sent to BWCI informing individuals of the date for Owens' hearing.

The defendants have thirty days to comply with these requests.

**\*5** Finally, after reviewing the record, it is clear that neither Ryan nor Lichtenstadter were personally involved with any of the events that occurred prior to Owens' parole hearing. In fact, Owens does not even contend that these defendants were aware of her situation before she was denied parole. Thus, the court will dismiss Owens' due process claims as they relate to Ryan and Lichtenstadter. *See, e.g., Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990) (affirming the dismissal of a prisoner's civil rights complaint because there was "nothing in the record to suggest that [the defendant] was involved in the acts complained of or that they were done with his knowledge and acquiescence") (relying on *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

2. Owens' equal protection claims.

Even though Owens has not claimed that she is a member of a protected class, "equal protection [still] requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose ...."[P]arole decisions, like all other forms of state action, cannot be based on impermissible purposes." *See Brandon v. District of Columbia Bd. of Parole,* 734 F.2d 56, 60 (D.C.Cir.1984)(*Brandon I* ). Under these circumstances, however, "the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently bear some rational relationship to a legitimate state purpose." *See Brandon v. District of Columbia Bd. of Parole,* 823 F.2d 644, 650 (D.C.Cir.1987)(*Brandon II* ).

After reviewing the briefing, it appears that the defendants are arguing that Owens cannot recover on her equal protection claim because even if she was treated differently than other inmates at BWCI, there was a legitimate reason for doing so. In particular, the defendants contend that prison policy prohibits inmates who are going to appear before the Parole Board from being informed of the exact date for their hearing due to the security risks created by the dissemination of this type of information. Because they had a legitimate reason for failing to provide Owens with the exact date of her parole hearing, the defendants seemingly argue, they did not violate her right to equal protection.

However, according her allegations, Owens was not physically brought before the Parole Board. Her hearing was apparently conducted through video-conferencing. Thus, it is not clear what security risk, if any, would have been generated by giving her a more specific (possibly, even, the exact) date of her appearance. Given the present record, the court cannot conclude that the failure to provide Owens with a more specific date for her parole hearing under these circumstances was rationally related to a legitimate state interest.

While the defendants also argue that Owens cannot maintain her equal protection claim because she was not similarly situated to other inmates who seemed to have been informed of their hearings weeks in advance, the court cannot rule as a matter of law on this issue at this stage of the litigation either.

**\*6** According to the defendants, Owens was not similarly situated to at least one of the inmates

Not Reported in F.Supp.2d                                                          Page 6
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

identified in her papers because this particular prisoner, Patricia Jones, was participating in different prison treatment program. As a result, this individual received notice of her hearing through different channels than Owens. Furthermore, it seems that it was through this different treatment program that this inmate was able to participate in the mock interview sessions.

In an apparent effort to create a genuine issue of material fact on this point, Owens has alleged that she was similarly situated to Jones. In fact, by her very words, she "alleges that she was indeed situated similarly to ... Jones for [the] purpose of [the] procedural rights to be afforded to both applicants."Owens has made this same contention concerning a second inmate named Nelson by simply stating that this inmate "was also similarly situated to" her.

Owens, however, cannot survive summary judgment by merely restating the allegations contained in her complaint or by blanketly denying the defendant's version of events. *See Searcy v. Singletary,* 894 F.Supp. 1565, 1569 (M.D.Fla.1995) ("[S]ummary judgment is not only proper, but required, when a party's response ... consists of nothing 'more than a repetition of his conclus [ory] allegations.' ") (quoting *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981)). Instead, Owens must submit *evidence* in support of her claims. This she has not done. Nor has she sought to discover any information on this matter through her document requests and interrogatories. Thus, it would appear that Owens has not introduced sufficient evidence to support the conclusion that she and Jones or Nelson were, indeed, similarly situated.

Nevertheless, because the defendants moved for summary judgment at a fairly early stage in the proceedings while simultaneously seeking a protective order to prevent discovery from going forward until their dispositive motion was resolved, the court does not believe that it would be appropriate to rule as a matter of law on these claims at present. *See* Fed.R.Civ.P. 56(f). For this reason, the court will again afford Owens the opportunity to refine the factual allegations giving rise to her equal protection claims.

Toward this end, Owens should identify the inmates who, she claims, were similarly situated to her. Owens should also describe the treatment that

they received which differed from the treatment she experienced. Again, the court will afford Owens sixty days to make these changes to the amended complaint.

Finally, because there is no indication or even an allegation that either Ryan or Lichtenstadter were personally involved with any of the events that occurred prior to Owens' parole hearing, the court will dismiss Owens' equal protection claims as they relate to these two defendants. *See, e.g., Gay,* 917 F.2d at 771 (citing *Rode,* 845 F.2d at 1207).

B. The Events At The Parole Hearing.

**\*7** As previously discussed, "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."*See Block,* 631 F.2d at 236;*accord Bermudez,* 936 F.2d at 1069 (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees." ') (quoting *Greenholtz,* 442 U.S. at 12). Consequently, even though the Parole Board has the discretion to grant or deny an inmate's request for parole, the Board cannot exercise its discretion in a "totally arbitrary" manner or base its decision on "impermissible criteria." *See Burkett v. Love,* 89 F.3d 135, 139 (3d Cir.1996) (quoting *Block,* 631 F.2d at 236);*accord Brandon I,* 734 F.2d at 60 ("[E]qual protection requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose .... [P]arole decisions, like all other forms of state action, cannot be based on impermissible purposes.").

In general, a parole board bases its decision on "impermissible criteria" when it denies a request for parole on the basis of the inmate's race, gender, religion, or some other traditionally suspect classification. *See Block,* 631 F.2d at 236. A parole board typically acts in an "arbitrary manner" when it bases its denial of parole on some other "frivolous" factor which bears "no rational relationship to the purpose of parole," such as the color of an inmate's hair or eyes, the school an inmate attended, or the style of his or her clothing. *Id.*

Here, Owens does not claim that she is a member of a suspect class or that she was denied parole because of this protected status. In fact, it does not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 7
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

seem as if Owens is even claiming that the Parole Board based its decision on factors which bore no rational relationship to the purposes of parole. Instead, as mentioned earlier, Owens essentially claims that she was denied parole because she was not provided with sufficient notice of her hearing.

Specifically, Owens contends that because she was not provided with meaningful notice of her parole hearing, she did not have a sufficient opportunity to "organize her thoughts" or to "arrange for favorable witness testimony" through letters or statement. For this reason, she alleges, the Parole Board denied her request to modify her sentence.

However, at most, these allegations only support the conclusion that the Parole Board based its decision on the observations that it made during the hearing.[FN8] For example, given Owens' contentions, it would seem that the Parole Board concluded that she was not serious about obtaining early release from custody because she had not adequately prepared herself for the hearing. *Cf. Garvey v. Casson, 423 F.Supp. 68, 70 (D.Del.1976)* (noting that the Board can consider a wide variety of factors in determining whether parole is appropriate, including a prisoner's "negative attitude"). Of course, the Board could have also based its decision on the lack of letters or other statements submitted on Owens' behalf which could be interpreted as evincing a belief by others that she should not be paroled. Taking these factors into account, the Board could have permissibly concluded that there was not a "reasonable probability that ... parole supervision would be in the best interest of society and an aid to rehabilitation of [Owens] as a law-abiding citizen."Del.Code. Ann. tit. 11, § 4347(c) (1999). Finally, because the Board of Parole has "virtually unfettered discretion with regard to parole-release decisions,"*see Eskridge v. Casson, 471 F.Supp. 98, 100-01 (D.Del.1979)*, it would not be proper to overturn a decision based on conclusions drawn from this type of information, especially without any evidence that the Board acted arbitrarily or impermissibly during its deliberations.

FN8. As mentioned earlier, there are no allegations or any evidence indicating that Lichtenstadter or any other Parole Board member was aware that Owens had only received notice of her hearing ten minutes before it was held. Nor is there any indication that any member of the Board was personally involved with the failure to

provide Owens with more sufficient notice. In fact, the evidence shows that, prior to the hearing, the Board informed the records supervisor at BWCI of the date on which Owens would appear before the Board. Finally, Owens has not claimed that, during her hearing, she informed members of the Parole Board that she had only recently received notice of the proceeding. Thus, there is no indication that Lichtenstadter was aware that the Parole Board may have been conducting a proceeding of which an inmate might not have received sufficient notice.

**\*8** Unfortunately, it is not clear whether Owens is alleging that the Parole Board took impermissible factors into account when it denied her request to modify her sentence or acted in an otherwise arbitrary manner. For this reason, the court will again afford her the opportunity to elaborate upon her claims before ruling on them as a matter of law.

When providing this clarification, Owens should specify whether she is challenging the Parole Board's decision as arbitrary or based on some other impermissible factor. Owens should also explain why she believes that the Board acted arbitrarily and identify what impermissible factors the Board took into account. Again, Owens will have sixty days to incorporate these changes into her amended complaint.

Nevertheless, to the extent that Owens is alleging that her constitutional right to equal protection was violated because other inmates who were similarly situated were paroled while she was not, these claims will be dismissed. As another district court has explained,

it is difficult to believe that any two prisoners could be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions [such as parole determinations] because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*See Rowe v. Cuyler,* 534 F.Supp. 297, 301 (E.D.Pa.1982), *aff'd,*696 F.2d 985 (3d Cir.1982). Thus, it is clear that the equal protection claim here fails as a matter of law.

Furthermore, to the extent that Owens is

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

contending that the failure to provide her with sufficient notice of her parole hearing violated her constitutional right under the Sixth Amendment to compel the attendance of witnesses at her hearing, this claim also fails as a matter of law. By its very terms, the Sixth Amendment only applies in the context of criminal trials. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ...."). In addition, "[t]he due process clause of the fourteenth amendment does not generate rights to confrontation, nor to cross-examination or compulsory process (at parole revocation hearings)." See Firkins v. Colorado, 434 F.2d 1232, 1234 (10th Cir.1970) (per curiam) (quoting Alverez v. Turner, 422 F.2d 214, 218 (10th Cir.1970)). Therefore, the court will dismiss Owens' claim under the Sixth Amendment.

Moreover, to the extent that Owens is attempting to recover for appearing before the Board of Parole through video-conferencing instead of in person, this claim will also be dismissed. Delaware statute specifically provides that "[t]he Board shall have no obligation to allow a person eligible for parole to appear before it, and the Board may deny a parole application without having interviewed the applicant." See Del.Code Ann. tit. 11, § 4347(e) (1999). Given the state of Delaware law, Owens does not have any constitutionally protected substantive right or liberty interest in appearing before the Board. Thus, the decision to allow her to appear through the use of video-conferencing could not have violated any of her constitutional rights or interests. Therefore, this claim fails as a matter of law.[FN9]

FN9. For this reason, the court will grant the defendants' motion for a protective order and deny Owens' motion to compel as they relate to Questions Nos. 9-22 which are listed in her first set of interrogatories and Item Nos. 2, 3, 7, and 8 which are listed in her first request for the production of documents.

*9 Additionally, to the extent that Owens is seeking to recover for the violation of any other state laws governing Delaware's parole system, state statute does not confer a right to introduce live witness testimony. See Del.Code Ann. tit. 11, § 4350 (1999) (While the Board must accept written statements, it need not allow individuals to attend the hearing or offer testimony.). Furthermore, these state law claims would appear to be subsumed within Owens' alleged due process violations. Cf. Block, 631 F.2d at 236 ("[O]nce a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."); accord Bermudez, 936 F.2d at 1069 (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees.' "). Therefore, to the extent that Owens is attempting to independently recover on these state law grounds, her claims will be dismissed.

Finally, because there is no indication, or even an allegation, that Ryan was personally involved with any of the events that occurred during Owens' parole hearing, the court will dismiss her due process claims as they relate to him. See, e.g., Gay, 917 F.2d at 771 (citing Rode, 845 F.2d at 1207). In fact, the court will dismiss all of Owens' claims against Ryan because it appears that she is attempting to hold him liable for his inability to convince the Parole Board to immediately grant her a new hearing. However, pursuant to Delaware statute, the Board itself decides whether it will schedule a hearing. See Del.Code Ann. tit. 11, § 4347(a) (1999) ("[T]he Board shall determine ... if a parole hearing will be scheduled."). Thus, Ryan cannot be held personally responsible for the Board's actions.

V. CONCLUSION.

The court has an obligation to interpret pro se pleadings liberally. It also cannot dismiss a complaint unless it appears beyond a doubt that there are no set of facts which would entitle the plaintiff to relief. Furthermore, the court cannot grant summary judgment in favor of a party when the other side has not received the opportunity to sufficiently support its claims. In light of these standards, the court has elected to dismiss only those claims which clearly fail as a matter of law. To the extent that Owens can refine the surviving claims to allege viable causes of action, she has additional time to do so. Furthermore, because the materials specified in several of Owens' discovery requests seem relevant to these issues, the court will require the defendants to produce these items or respond to her questions before Owens is required to clarify the factual basis for her claims. The court will issue an order to this effect in conjunction with this opinion.

D.Del.,2000.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728263 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Owens v. Ryan
Not Reported in F.Supp.2d, 2000 WL 1728263
(D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.