IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAYMOND L. BRUTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-791-SLR |
| | ) | |
| PAMELA A. MINOR, CHERYL REGAN, | ) | |
| STANLEY W. TAYLOR, and WARDEN | ) | |
| RAPHAEL WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

Raymond L. Bruton, Pro Se, Wilmington, Delaware.

Erica Y. Tross, Deputy Attorney General for the State of Delaware, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: July 30, 2008
Wilmington, Delaware

*[signature]*
**ROBINSON, District Judge**

## I. INTRODUCTION

Pro se plaintiff Raymond Bruton ("plaintiff") filed this lawsuit pursuant to 42 U.S.C. § 1983 against defendants Pamela Minor, Treatment Administrator ("Minor"); Cheryl Regan, Unit Counselor ("Regan"); former Commissioner Stanley Taylor ("Taylor"); and Warden Raphael Williams ("Williams") (collectively "defendants"). Plaintiff claims that defendants deliberately delayed scheduling his hearing before the Board of Parole, a violation of his Fifth, Eighth, and Fourteenth Amendment rights. (D.I. 2) On November 9, 2007, Taylor was dismissed pursuant to Fed. R. Civ. P. 4(m). (D.I. 35) Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (D.I. 40) For the reasons given below, defendants' motion for summary judgment is granted.

## II. BACKGROUND

Plaintiff was formerly an inmate at Delaware Correctional Center ("DCC")[1] and Howard R. Young Correctional Institution ("Gander Hill"). (See D.I. 42 at A65-70, A90) On November 19, 2002, while housed at DCC, plaintiff had a hearing before the Delaware Board of Parole ("the Board") and was denied parole. (Id. at A65, A71) The Board recommended he "develop a plan for continued mental health counseling and violent offender counseling." (Id. at A71) The Board advised plaintiff that he would be eligible to be reheard for parole consideration in November of 2004. (Id.) Plaintiff re-applied for parole and the Board again denied his application on February 8, 2005. (Id. at A73) The Board recommended that he "develop a plan for continued mental health,

---

[1] The DCC has been renamed the James T. Vaughn Correctional Center, but will continue to be referred to in this case as the DCC.

violent offender, and anger management counseling." (Id.) The Board advised plaintiff that he would be eligible to be reheard for parole upon successful completion of the Key Program. (Id.)

In August of 2005, plaintiff was transferred to Gander Hill and entered the Key Program. (Id. at A66) On April 9, 2006, prior to his completion of the Key Program, plaintiff wrote a letter to Ms. C. Pettyjohn[2] requesting deferral of his parole hearing until he could fulfill the recommendations of the Board. (Id. at A74) Minor confirmed with plaintiff that he wanted to defer his hearing and subsequently sent an email to the Bureau Chief and the Board Chairperson. (Id. at A67)

On May 26, 2006, plaintiff completed the Key Program. (Id. at A67) In July of 2006, plaintiff was scheduled to participate in the Alternatives to Violence ("AVP") Basic Workshop, which was the Board-recommended anger management program. Plaintiff was unable to participate because he was "housed in administrative segregation for a sanction he received as a result of being found guilty of institutional misconduct, namely disorderly/threatening behavior." (Id.) On October 1, 2006, following plaintiff's release from administrative segregation in August, plaintiff completed the AVP Basic Workshop. (Id.)

On the same day plaintiff completed the course, he sent a letter to Minor advising her that he had completed AVP and requesting classification by the Multi-Disciplinary

---

[2]Ms. Pettyjohn appears to have been plaintiff's counselor at Gander Hill before being transferred to the DCC. (See D.I. 2 at 25)

Team ("MDT") Board[3] and review by the Parole Board. (Id. at A78) On October 3, 2006, Minor responded to plaintiff's letter and stated that she would request that a counselor follow up and review plaintiff's status with him. (Id.) On October 17, 2006, plaintiff wrote another letter to Minor stating that no counselor had seen him and asking if something was wrong. (Id. at A79) On October 19, 2006, Minor responded, stating that "consideration for a Pre-Parole staffing" had not been initiated, because plaintiff opted to have his parole deferred. (Id.) She stated that she was aware plaintiff completed the AVP Basic Workshop and his case would be reviewed to see how to proceed next. (Id.)

On October 22, 2006, plaintiff wrote a letter to Regan requesting placement on the list to be seen by the MDT Board, so that he could have a parole hearing scheduled. (D.I. 2 at 12) On October 29, 2006, plaintiff wrote Minor another letter inquiring about the status of his parole hearing and carbon copied Warden Williams. (D.I. 42 at A80) On October 31, 2006, Minor again responded that a staff member would meet with him regarding his status and suggested that he "be cooperative and patient throughout this process." (Id.) On October 30, 2006, Williams wrote a memorandum to plaintiff informing him that he does not become involved in individual cases and that plaintiff's correspondence was also forwarded to plaintiff's unit counselor, Regan, for review. (Id. at A81)

On November 20, 2006, plaintiff wrote a letter to Taylor stating that he had written letters to Minor and Regan and that his "due process [was] being violated." (D.I. 2 at 15-

---

[3]The MDT Board meets to decide whether the institution should recommend to the Parole Board that inmates be released. (See id. at A68)

3

16) On November 21, 2007, plaintiff filed a grievance regarding the delay in his classification and parole hearing. (Id. at 17) He requested an investigation into the delay, an MDT classification, and a parole hearing date. (Id.) On November 28, 2006, the grievance request was denied as "not grievable," because classification issues have their "own appeal process." (Id. at 20) On November 23, 2007, plaintiff wrote a letter to Williams claiming that Minor was delaying his parole hearing "for as long as she possibly can." (D.I. 42 at A82) Plaintiff stated that he sent multiple letters to Minor and Regan, that the "only outlet [he had] left [was] the courts," and that he wanted to give Williams an opportunity to address the situation before he filed in court. (Id. at A83) On November 27, 2006, Williams wrote plaintiff a memorandum in response to his letter stating that Minor and Regan are aware of his request and both individuals responded to him in writing. (Id. at A84) Williams suggested that plaintiff "be patient." (Id.) On December 3, 2006, plaintiff wrote another letter to Williams stating that Minor is violating his "constitutional rights to [a] parole hearing." (Id. at A86) On December 4, 2006, Williams again responded and stated that he could "only alert Ms. Minor to [his] request and ask her to review [his] case and take the appropriate action." (Id. at A87)

Plaintiff initiated the case at bar on December 27, 2006. On March 7, 2007, the MDT Board held a hearing to determine its recommendation to the Parole Board regarding plaintiff's parole. (Id. at A88) The MDT Board recommended that plaintiff not be granted parole due to his "failure to abide by previous Parole Board recommendations." (Id.) On July 24, 2007, the Parole Board met and voted to grant plaintiff's request for parole. (Id. at A89) On July 26, 2007, plaintiff was paroled to Level 4 Crest and Level 4 Work Release until his short time release date, followed by Level 3

supervision.[4]  (Id. at A90)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a

---

[4]Plaintiff's short time release date was March 22, 2008 and he is now presumably under Level 3 supervision.  (Id. at 91)

sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Defendants make five arguments for summary judgment in their favor. (D.I. 41) First, they contend that they are immune from liability in their official capacities pursuant to the Eleventh Amendment. Second, they argue that plaintiff's claims are moot, because plaintiff has been released on parole. Third, they assert that there is no claim against Williams, because he had no personal involvement and was not deliberately indifferent to plaintiff's needs. Fourth, they claim that defendants did not violate plaintiff's due process rights, because there was no protected liberty interest in receiving parole or a hearing before the Parole Board. Fifth, they contend that defendants are protected from liability in their individual capacities by the doctrine of qualified immunity.

### A. Eleventh Amendment

The Eleventh Amendment bars suits against states or state officials unless immunity has been waived by the state or Congress overrides the immunity through its power under § 5 of the Fourteenth Amendment. Will v. Mich. Dept. of State Police, 491 U.S. 58, 66 (1989). While Title 42, Section 1983[5] of the United States Code "provides a federal forum to remedy many deprivations of civil liberties," it does not allow litigants to

---

[5]Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6

seek a remedy against a State. Id. A suit against a state official in his official capacity is treated as a suit against the State. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Supreme Court has held that neither a "State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71. Suits against States and state officials sued in their official capacities seeking retroactive relief such as monetary damages or back pay are barred under the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 668-69 (1974); Will, 491 U.S. at 71. Since plaintiff is seeking retroactive relief in the form of monetary damages, he can only recover by suing defendants in their personal capacities. Although plaintiff does not specify under what capacity he is suing defendants, the court will construe his complaint liberally as suing defendants in their personal capacities. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). Since the court has found that this is a personal capacity suit, the Eleventh Amendment does not apply.

### B. Mootness

Pursuant to Article III, Section 2, of the United States Constitution, federal courts can only consider ongoing cases or controversies. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990); United States v. Kissinger, 309 F.3d 179, 180 (3d Cir. 2002)(finding that an actual controversy must exist during all stages of litigation). "When the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction." Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004). In order to show that neither party has a legally cognizable interest in the pending litigation, two conditions must be satisfied. Los Angeles County v. Davis, 440 U.S. 625, 631

(1979). First, it must be said "with assurance that 'there is no reasonable expectation . . .' that the alleged violation will reoccur." Second, "interim reliefs or events [must] have completely and irrevocably eradicated the effects of the alleged violation." While the first condition is likely met because plaintiff has already been paroled, the second condition is not met. Since plaintiff seeks monetary damages to compensate for the effects of the delay (see D.I. 2), the granting of plaintiff's parole request does not completely eradicate the effects of the alleged violation. The court finds that plaintiff has a legally cognizable interest in the outcome and the case is not moot.

### C. Qualified Immunity

Qualified immunity is a privilege extended to public officials "insulating them from suit . . . to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). This privilege "can be overcome when the state officials violate 'clearly established . . . constitutional rights of which a reasonable person would have known.'" Wright, 409 F.3d at 599-600 (quoting Harlow, 457 U.S. at 818). The initial question is whether the facts show a violation of a constitutional right. See Scott v. Harris, --- U.S. ----, 127 S.Ct. 1769, 1774 (2007). Only then may the court proceed to determine if the right violated was clearly established. Id. This Supreme Court precedent expresses a preference to explore the merits of an alleged constitutional violation in plaintiff's § 1983 claim, to which the court now turns. See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).

### D. Section 1983 Claims

Plaintiff claims that Minor and Regan "deliberately withheld [him] from going to [his] MDT hearing." (D.I. 2 at A-43) Plaintiff also alleges that Williams "knew the defendants were deliberately denying [him] from going to the MDT Hearing but refuse[d] to do anything to help [him.]" (Id.) Plaintiff argues that the alleged delay amounted to a violation of his Fifth and Fourteenth Amendment rights of due process.

Plaintiff alleges the delay violates his right to due process because it extended the time before his parole hearing. The mere existence of a parole system does not create a liberty interest protected by the Due Process Clause. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 4 (1979). "Liberty interests protected by the Fourteenth Amendment may arise from two sources - the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Supreme Court has explained that liberty interests protected by the Due Process Clause are limited to "freedom from restraint" which imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S 472, 483-84 (1995). Being required to wait a longer period of time between parole hearings does not create an "atypical and significant hardship in relation to the ordinary incidents of prison life." Id. Furthermore, the Delaware parole statute does not create a liberty interest in parole. Rather, the statute authorizes the Board to reduce a prisoner's minimum term of parole eligibility "when the Board is satisfied that the best interests of the public and the welfare of the person will be served by such reduction." 11 Del. C. Ann. § 4346(b). Clearly, the Board has broad discretion in granting or denying parole. Plaintiff had, at most, an expectation that he may at some time be released on parole if the Board determined that his release was in the best interests of

9

society, as well as in his best interests. Neither the Fourteenth Amendment nor the Delaware parole statute grant plaintiff a protected liberty interest. Consequently, plaintiff's Fourteenth and Fifth Amendment due process claims have no merit and defendants are entitled to summary judgment on those claims.

Plaintiff does not specifically allege an Eighth Amendment violation; however, because plaintiff is a pro se litigant, the court has an obligation to construe his submissions liberally. See Otero, 502 F.3d at 334. Plaintiff's claim that his "health and welfare" were affected will be construed as an Eighth Amendment cruel and unusual punishment claim. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes. This provision can be applied to deprivations that are not part of the sentence (Wilson v. Seiter, 501 U.S. 294, 297 (1991)), but the behavior "must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Conduct constituting cruel and unusual punishment is "obduracy and wantonness, not inadvertence or error in good faith." Id. The Supreme Court has held that, when a prisoner claims that conditions of his confinement violate the Eighth Amendment, he must demonstrate a culpable state of mind on the part of the prison officials. Wilson, 501 U.S. at 299-300.

There is no evidence of wantonness or a culpable state of mind. Plaintiff has failed to show that defendants intentionally delayed the parole process to keep him in prison. Each letter sent by plaintiff to defendants was responded to promptly with an answer and often a request to be patient. (See D.I. 2) Additionally, the delay was not of a significant length and certainly not sufficient for the standard of wantonness. From the time of plaintiff's request for a parole hearing to the date of that hearing, only six months

elapsed.  (See id.)  Prior to that time, plaintiff also caused a comparable six-month delay when he requested the deferral of his parole hearing in order to finish his AVP course.  (See id.)  Defendants' conduct does not meet the wantonness standard for cruel and unusual punishment.

Without any substantiated proof of constitutionally protected conduct, plaintiff fails to identify a genuine issue of material fact.  As a result, the remaining defense regarding Warden Williams' personal involvement and defendants' assertion of qualified immunity need not be addressed.

## V. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted. An appropriate order shall issue.